[No. 80941-1.   En Banc.]
Argued February 12, 2009.     Decided May 28, 2009.

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY GAYLORD
GARVIN, *Petitioner*.

244

*Casey Grannis* (of *Nielsen, Broman & Koch, PLLC*), for petitioner.

*Ronald S. Zirkle, Prosecuting Attorney*, and *Kevin G. Eilmes, Deputy*, for respondent.

¶1 SANDERS, J. — We are asked to determine whether a police officer exceeded the permissible scope of a stop-and-frisk search when he squeezed a man's pants pocket until he discovered a small packet of methamphetamine. The Court of Appeals affirmed the man's conviction for one count of possession of methamphetamine, holding the of-

ficer did not exceed the scope of a lawful *Terry* frisk[1] when he squeezed the contents of the man's coin pocket despite ascertaining there was no weapon there. We reverse the conviction, as the evidence was the product of an unlawful search and should have been suppressed.

## FACTS AND PROCEDURAL HISTORY

¶2 On October 21, 2005, Union Gap police officer Gregory Cobb was on patrol when he stopped Anthony Gaylord Garvin's car for what he observed to be either burned out or defective brake lights and a broken front windshield. As he questioned Garvin, Cobb saw the car's ignition had been punched out and there was a knife lying next to Garvin on the front seat. Clerk's Papers (CP) at 14. Cobb asked his patrol partner to have Garvin get out of the car, and Garvin used the knife to turn off the ignition.[2] Garvin put the knife back down and got out of the car without incident.

¶3 Cobb asked Garvin whether he had any other weapons on him, and Garvin responded that he had another knife in his pants pocket. After directing Garvin to stand with his feet shoulder-width apart and his hands interlaced behind his back, Cobb proceeded to pat him down. *Id.*; Verbatim Report of Proceedings (RP) at 5. The officer found and removed a lock blade knife from Garvin's rear pants pocket. Cobb wrote in his report:

> As I pat searched his right front pants pocket area I felt something in the coin pocket. I recognized the feel of the object as a plastic baggie. There was something inside the plastic baggie that moved around inside when I squeezed it. I recognized the feel of the object through training and experience as the type of baggie used by drug users to package illegal drugs.

---

[1] This is the common term for the type of weapons search sanctioned by *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) (holding an officer may frisk someone if he believes the suspect "may be armed and presently dangerous").

[2] According to the record, Garvin was not charged with stealing the car. Garvin claims he had "legitimate possession of the vehicle and the knife was the only means of starting the vehicle." CP at 21 (Mem. in Supp. of Mot. to Suppress Evidence).

I placed Garvin in handcuffs and removed the baggie from the coin pocket.

CP at 14-15.

¶4 Officer Cobb elaborated on the incident during the March 28, 2006 hearing on Garvin's motion to suppress the evidence.[3] On direct examination, Cobb testified he routinely uses a slow squeezing method rather than a traditional pat-down search because he is "concerned about needles and sharp objects." RP at 6. He explained, "[Y]ou can feel the texture of things by squeezing." *Id.* "We don't really pat anymore. It's more of a squeeze search. . . . I'll squeeze the contents of the pocket and try to identify what's in there, and then I work my way up the pocket and I squeeze." *Id.* at 7. The prosecutor asked, "All the squeezing is routine for you," to which Cobb replied, "Yes." *Id.* at 8.

¶5 The officer said he applied the same technique to his search of Garvin's jean pockets:

> Something was in the pocket. It was obvious when I squeezed it gave way, and it felt like there was something granul[ar] inside the pocket. As I continued to squeeze, the granules separated. It's like the area I pinched granules separated and down from there.

*Id.* at 9. Cobb testified he knew through experience that a coin pocket is a common place for people to keep so-called dime baggies. "I pretty much knew what it was in terms of I suspected I was dealing with narcotics." *Id.* at 10. Cobb then handcuffed Garvin and removed the bag from his coin pocket, noting it was filled with an "off-white, crystalline

---

[3] At the hearing before Judge Blaine G. Gibson of the Yakima County Superior Court, the State stipulated Garvin was not under arrest at the time of the search. RP at 2. Garvin did not contest the legality of the initial stop, nor the officer's right to frisk him for weapons. Br. of Appellant at 8. Both sides agreed the only factual issue before the court was whether the narrow scope of the *Terry* frisk had been exceeded. Officer Cobb offered the only testimony during the hearing.

substance . . . that [he] recognized through training and experience as suspected methamphetamine."[4] *Id*.

¶6 On cross-examination, Cobb testified he did not feel any weapons or hard objects when he first felt Garvin's coin pocket. *Id*. at 12. He said he continued to squeeze the pocket in "one motion" and suspected it contained narcotics but did not know. *Id*. He knew, however, that the object in Garvin's pocket was not a weapon. Defense counsel then had the officer demonstrate on Garvin how he conducted the search. The officer testified he could tell during the demonstration that there was a lighter and some change or papers in one of Garvin's pockets, and "a plastic baggy containing something" in another pocket. *Id*. at 14. He admitted he could not tell by touch what was in the bag.

¶7 Upon questioning by the court, the officer explained he feels a coin pocket in "a separate squeeze" because "the dimensions of the pocket are much different," and he is concerned about needles and razor blades, as the pocket is not large enough for other weapons. *Id*. at 16. Cobb concluded:

> In my experience and my training, when I feel a small an inch and a half by inch and a half plastic baggy containing a powder or crystalline substance, my training and experience tells me that that's contraband. In a front pocket, a big baggy, [defense counsel] is right. It could be Kool-Aid for all I know. In that pocket, that location, that size of a container, my training and experience tells me that I am dealing with contraband.

*Id*. at 17.

¶8 The trial court denied Garvin's motion to suppress and upheld the warrantless search and seizure under the plain touch doctrine[5] discussed in *State v. Hudson*, 124

---

[4] Officer Cobb wrote in his report that the substance he found in the coin pocket of Garvin's jeans weighed 0.5 grams and tested positive for amphetamines. CP at 15.

[5] This doctrine, the tactile equivalent of the plain view doctrine, is also termed the "plain feel doctrine" and defined by *Black's Law Dictionary* as "[t]he principle that a police officer, while conducting a legal pat-down search, may seize any

Wn.2d 107, 874 P.2d 160 (1994). *See* CP at 32-34 (Findings of Fact and Conclusions of Law Re: [CrR] 3.6).[6] The judge concluded Cobb "used a single squeezing motion as opposed to squeezing, sliding or manipulating the contents of pockets." *Id.* at 32-33 (Finding of Fact III). "Upon squeezing the pocket the officer immediately recognized the incriminating character of a baggy and its contents as possible narcotics." *Id.* at 33 (Finding of Fact IV). The judge concluded, "Where an officer lawfully pats down a defendant . . . and feels an object possessing characteristics that make its identity as contraband immediately apparent, . . . there has been no invasion of the Defendant's privacy beyond the search for weapons." *Id.* (Conclusion of Law III). On May 26, 2006, Garvin was found guilty of possession of methamphetamine after a bench trial on stipulated facts.[7] On appeal to Division Three, Garvin argued Officer Cobb exceeded the scope of a lawful *Terry* frisk when he squeezed the contents of Garvin's pocket despite discovering there was no weapon there. Garvin also claimed the officer lacked probable cause to believe the object in his pocket was contraband. But the Court of Appeals affirmed. In an unpublished opinion, the court held that based on the officer's testimony, he "immediately recognized narcotics in Mr. Garvin's pocket during the weapons frisk without any further manipulation of the pocket." *State v. Garvin*, noted at 141 Wn. App. 1015, 2007 WL 3112416, at *3, 2007 Wash. App. LEXIS 2902, at *8; CP at 32-34. Thus, the court concluded, "Under the plain touch doctrine of *Hudson*, the officer's actions did not exceed the scope of *Terry*." *Garvin*, 2007 WL 3112416, at *3, 2007 Wash. App. LEXIS 2902, at *8; *see Hudson*, 124 Wn.2d 107; *Terry*, 392 U.S. 1. We granted review. *State v. Garvin*, 163 Wn.2d 1059, 187 P.3d 752 (2008).

---

contraband that the officer can immediately and clearly identify, by touch but not by manipulation, as being illegal or incriminating." BLACK'S LAW DICTIONARY 1187-88 (8th ed. 2004).

[6] Judge Gibson entered the "Findings of Fact and Conclusions of Law re [CrR] 3.6" on June 14, 2006.

[7] An unrelated bail jumping charge was dismissed by agreement. CP at 11-13.

## STANDARD OF REVIEW

■ ¶9 When reviewing the denial of a suppression motion, an appellate court determines whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Evidence is substantial when it is enough "to persuade a fair-minded person of the truth of the stated premise." *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999). We review conclusions of law from an order pertaining to the suppression of evidence de novo. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002); *see also State v. Carneh*, 153 Wn.2d 274, 281, 103 P.3d 743 (2004).

## ANALYSIS

■ ¶10 Officer Cobb testified he knew there was no weapon in Garvin's coin pocket but continued squeezing in one slow motion because he felt something and suspected it might be a baggy with narcotics. In doing so, he exceeded the permissible scope of a limited *Terry* stop-and-frisk. "Without probable cause and a warrant, an officer is limited in what he can do. He cannot arrest a suspect; he cannot conduct a broad search." *State v. Setterstrom*, 163 Wn.2d 621, 626, 183 P.3d 1075 (2008) (citing *Hudson*, 124 Wn.2d at 112).

■■ ¶11 As a general rule, warrantless searches and seizures are per se unreasonable, in violation of the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution. *Duncan*, 146 Wn.2d at 171 (citing *State v. Williams*, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984)). There are " 'a few jealously and carefully drawn exceptions to the warrant requirement,' " which include exigent circumstances, searches incident to a valid arrest, inventory searches, plain view searches, and *Terry* investigative stops. *Duncan*, 146 Wn.2d at 171-72

(internal quotation marks omitted) (quoting *Williams*, 102 Wn.2d at 736, and citing *State v. Rife*, 133 Wn.2d 140, 150-51, 943 P.2d 266 (1997)). The State bears a heavy burden to show the search falls within one of the "narrowly drawn" exceptions. *State v. Jones*, 146 Wn.2d 328, 335, 45 P.3d 1062 (2002). The State must establish the exception to the warrant requirement by clear and convincing evidence. *State v. Smith*, 115 Wn.2d 775, 789, 801 P.2d 975 (1990).

▮▮ ¶12 In what is commonly known as a *Terry* stop, a police officer may briefly stop and detain an individual for investigation without a warrant if the officer reasonably suspects the person is engaged or about to be engaged in criminal conduct. *State v. Day*, 161 Wn.2d 889, 895, 168 P.3d 1265 (2007). The officer may briefly frisk the individual for weapons if she reasonably believes her safety or that of others is endangered. *Id.*; *see Terry*, 392 U.S. at 20-27. For a permissible *Terry* stop, the State must show (1) the initial stop is legitimate, (2) a reasonable safety concern exists to justify the protective frisk for weapons, and (3) the scope of the frisk is limited to the protective purposes. *Duncan*, 146 Wn.2d at 172; *see also Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972).

▮ ¶13 Here, Garvin does not contest Officer Cobb was justified in stopping him and frisking him for weapons. Rather, he argues Cobb exceeded the permissible scope of the frisk by squeezing his pocket rather than patting him down. Garvin contends the Court of Appeals "extended one of this Court's carefully drawn exceptions to the warrant requirement in treating an officer's squeeze search as synonymous with a lawful pat down." Suppl. Br. of Pet'r at 7. According to Garvin, "Division Three held police officers can lawfully manipulate objects from the outset of a *Terry* frisk so long as the manipulation is intrusive enough to allow for the immediate recognition of contraband." *Id.* at 6.

¶14 The Court of Appeals agreed with the trial court that the search was lawful under the "plain touch" doctrine discussed in *Hudson*, 124 Wn.2d at 113-20. But Division

Three acknowledged that under *Hudson*, "[a]t the point the officer ascertains a weapon is not involved, any continuing search becomes unreasonable." *Garvin*, 2007 WL 3112416, at *2, 2007 Wash. App. LEXIS 2902, at *5 (citing *Hudson*, 124 Wn.2d at 113). According to the court, "The officer may not slide, squeeze or in any other manner manipulate the object to ascertain its incriminating nature. Such manipulation of the object will exceed the scope of a *Terry* frisk." *Id.* (citation omitted).

¶15 The Court of Appeals was correct to cite *Hudson* but misapplied it to the facts of this case, which come down to the officer's report and his testimony at the suppression hearing. First, it is important to understand the facts of *Hudson*. In *Hudson*, 124 Wn.2d at 110, police detectives conducted a pat-down search of a suspect wearing a jacket. While patting down the outside of the man's jacket, one of the detectives " 'felt a quite substantial bulge, hard something' " in the right jacket pocket, which the officer thought might be a weapon. *Id.* (quoting videotape recorded proceedings at 50-51). The detective reached into the pocket, felt the item, and instantly recognized it as a pager. The officer also felt paperwork and a baggie containing a " 'ragged edge chunk' " of substance that he suspected was a large rock of cocaine. *Id.* (quoting videotape recorded proceedings at 54). The officer took out the baggie and pager, confirming his suspicions, and he and his partner arrested the man, searching the rest of his pockets, which yielded more cocaine and a large stash of cash. *Id.*

¶16 In *Hudson*, the trial court had suppressed the evidence, reasoning that " '[a]s soon as the detective realized he was not feeling a weapon, any further search of the baggie was unjustified.' " *Id.* at 111 (quoting CP at 48). The Court of Appeals affirmed the trial court, reasoning Washington had *not* recognized a plain touch exception to the warrant requirement because the tactile sense does not usually result in the immediate knowledge of the nature of an item. *Id.*

¶17 This court reversed the Court of Appeals in *Hudson*, holding that prior decisions did not preclude the application of the "plain touch" doctrine but instead "merely acknowledged that touch alone cannot 'usually' result in immediate recognition of contraband." *Id.* at 115 (quoting *State v. Broadnax*, 98 Wn.2d 289, 298, 654 P.2d 96 (1982), *abrogated on other grounds by Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993)). This court reiterated that the application of the plain touch doctrine depends on whether an officer's "recognition of the contraband is as immediate and as accurate as recognition of a weapon," thereby meeting a key requirement of the plain view doctrine. *Id.*[8] Significantly, in *Hudson*, we remanded for further fact finding to determine whether the detective immediately recognized he was touching cocaine or whether he improperly continued his search after realizing there was no weapon. *Id.* at 119-20.

¶18 Here, the trial court did not enter a specific finding on whether Officer Cobb determined Garvin's coin pocket contained the baggy with suspected contraband *before* or *after* he discovered there was no weapon there. The trial court merely found that "[u]pon squeezing the pocket the officer immediately recognized the incriminating character of a baggy and its contents as possible narcotics. This was based on the location, size and feel of the baggy." CP at 33 (Finding of Fact IV). To be sure, this finding in itself is confusing: can the officer recognize it's a baggy full of narcotics because of its telltale location in the coin pocket, or must he continue squeezing until he doesn't just feel the outside of the bag but its granular contents? Under either

---

[8] *See* Laura T. Bradley, Comment, *The Plain Feel Doctrine in Washington: An Opportunity to Provide Greater Protections of Privacy to Citizens of this State*, 19 SEATTLE U. L. REV. 131, 134 (1995) (recommending rejection of the plain feel doctrine because it is "unnecessary, unworkable, subject to abuse and, most importantly, does not adequately protect the privacy interests of Washington citizens," under article I, section 7 of the state constitution). Bradley and other commentators argue drugs are often carried in small quantities of a gram or less, and the doctrine requires a standard of certainty that can rarely be met, permits searches that are highly intrusive, and invites abuse by law enforcement officers. *Id.* at 157-58.

interpretation, the court's finding does not fully track the officer's report and testimony.

¶19 In his report, Cobb indicates he first felt something in the coin pocket, which he "recognized . . . as a plastic baggie." *Id.* at 14. He continued squeezing and noticed that "[t]here was something inside the plastic baggie that moved around inside when I squeezed it." *Id.; see also* RP at 9. He similarly testified, "It was obvious when I squeezed it gave way . . . . As I *continued to squeeze*, the granules separated. It's like the area I *pinched* granules separated and down from there." RP at 9 (emphasis added).

¶20 The officer admitted he did not feel any weapons or hard objects in the pocket but continued to squeeze in "one motion" anyway. *Id.* at 12. This indicates Cobb immediately ascertained there were no weapons (whether razor blades or needles small enough to fit in a tiny coin pocket), and then as he continued to manipulate, he discovered the baggy and its substance with a granular texture. *Id.* at 9-10, 12. Indeed, to feel 0.5 grams of methamphetamine through a plastic bag and a jeans coin pocket, Cobb needed to manipulate the contents thoroughly. His testimony about how coin pockets are common places to stash dime baggies further indicates that at that point, the squeezing was not about finding weapons but about discovering drugs. Thus, Cobb's actions run afoul of both *Hudson*'s requirement of "immediate recognition of contraband," 124 Wn.2d at 115, and *Dickerson*, 508 U.S. 366, which we cited with approval in *Hudson*.

¶21 In *Dickerson*, *id.* at 375-76, the United States Supreme Court held police may seize contraband detected through the sense of touch only as long as the protective pat-down stays within the bounds marked by *Terry*. That's because touch alone can result in an officer's immediate knowledge of suspected contraband if the contour or mass of the object makes its identity immediately apparent. *Id.* at 375. However, the Court said that since the officer in *Dickerson* determined the lump was contraband only after squeezing and otherwise manipulating the contents of the

defendant's pocket, which the officer already knew contained no weapon, the search exceeded the lawful bounds of *Terry*. *Id.* at 368-78.

¶22 Like the United States Supreme Court, this court has recognized a *Terry* frisk for weapons must be brief and nonintrusive. *Day*, 161 Wn.2d at 895. In *State v. Hobart*, 94 Wn.2d 437, 446, 617 P.2d 429 (1980) for example, an officer felt "spongy" objects in the defendant's pocket during a weapons pat-down. Although the officer did not fear the objects were weapons, he squeezed them anyway and determined they contained narcotics. *Id.* This court held that once the officer ascertained the objects were not weapons, the permissible scope of the search ended and he needed probable cause to search further. *Id.* "To approve the use of evidence of some offense unrelated to weapons would be to invite the use of weapons[ ] searches as a pretext for unwarranted searches, and thus to severely erode the protection of the Fourth Amendment." *Id.* at 447; *see also State v. Loewen*, 97 Wn.2d 562, 567, 647 P.2d 489 (1982) (noting officer's search exceeded scope when he removed a small tube used for sniffing cocaine after determining the pocket contained no weapons).

¶23 Since the methamphetamine Cobb discovered in Garvin's coin pocket was the product of an unlawful search, the evidence must be suppressed. "The exclusionary rule mandates the suppression of evidence gathered through unconstitutional means." *Duncan*, 146 Wn.2d at 176. "The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

## CONCLUSION

¶24 According to his report and testimony, Officer Cobb immediately ascertained there was no weapon in Garvin's coin pocket but continued squeezing the contents, first

determining there was a plastic baggy inside and then manipulating the substance in the bag. We hold it is unlawful for officers to continue squeezing—whether in one slow motion or several—after they have determined a suspect does not have a weapon, to find whether the suspect is carrying drugs or other contraband. If that were permissible, there would be little to distinguish a frisk incident to a *Terry* stop from a general search for contraband, and we strongly disapprove of such legal fiction. Indeed, one of the narrowly drawn exceptions to the warrant requirement would swallow the rule.

¶25 Therefore, we reverse the Court of Appeals and dismiss Garvin's conviction since the evidence was the fruit of an illegal search and should have been suppressed.

ALEXANDER, C.J.; C. JOHNSON, MADSEN, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ.; and SEINFELD, J. PRO TEM., concur.