**FILED**
**JUNE 26, 2018**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35110-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROBERT JOSEPH GARCIA SALINAS, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Robert Salinas appeals his conviction for possession of a controlled substance. He argues the methamphetamine that forms the basis of his conviction should have been suppressed because it was discovered as the fruit of an unlawful seizure. We disagree and affirm.

FACTS

Just after midnight in December 2016, an Othello Police Department officer stopped a vehicle for excessive speed during snowy conditions. Upon making contact with the vehicle's driver, the officer immediately noticed the smell of marijuana. The officer also noticed that the driver and passenger (later identified as Mr. Salinas) were wearing red, a known gang color.

The officer began his encounter by addressing the traffic issues. The officer asked the driver for a license, registration, and proof of insurance. The driver stated he did not have any of those documents and verbally identified himself as Ricky Ramirez. Mr. Ramirez explained that he was unsure about the status of his driver's license. The officer asked Mr. Ramirez his age, and he responded that he was 20 years old. The legal age for possession of recreational marijuana is 21. *See* former RCW 69.50.4013(4) (2015).

At this point, the officer asked Mr. Ramirez how much marijuana was in the vehicle. Mr. Ramirez acknowledged the presence of a glass smoking device in between the front seats and pointed out a jar of marijuana on the back seat, which he allowed the officer to remove from the vehicle. The officer then asked Mr. Ramirez if there was any other marijuana in the vehicle. Mr. Salinas volunteered that he had some marijuana on him, but was 22 years old. Mr. Salinas held up a bag for the officer to see, and while the officer could not see it clearly, he assumed the bag contained marijuana. The officer informed Mr. Salinas he could not have marijuana in the vehicle. It is an infraction to possess marijuana in a vehicle if the package or container has been opened, the seal broken, or the contents partially removed. RCW 46.61.745.

Despite being advised that Mr. Salinas was 22, the officer was suspicious of Mr. Salinas's true age. The officer asked Mr. Salinas for identification. Mr. Salinas showed

the officer his identification and the officer took down the information. At that point, both Mr. Ramirez and Mr. Salinas were told to remain in the vehicle.

The officer called dispatch to run a driver's check on Mr. Ramirez and also request verification of Mr. Salinas's identity and age. The dispatch officer was having difficulty finding the information, so the officer ran it himself and confirmed Mr. Ramirez's license was suspended and Mr. Salinas's age was 22. Mr. Ramirez was then removed from the vehicle for further questioning. He also consented to a vehicle search.

During the course of the stop, a second officer arrived as backup. Approximately 20 seconds after the first officer began speaking with Mr. Ramirez outside the vehicle, the assisting officer noticed Mr. Salinas making a series of furtive movements. The officer explained the movements as "[e]xcessive movements about his person: reaching in his pockets, reaching around, reaching in general." Report of Proceedings (Feb. 13, 2017) at 61. The assisting officer approached the driver's window and asked Mr. Salinas if he had any weapons on him. Mr. Salinas responded that he had a switchblade, so the assisting officer asked Mr. Salinas to step outside the vehicle. The first officer, unaware of the knife, was still engaged in questioning Mr. Ramirez. When the first officer noticed Mr. Salinas getting out of the vehicle, he told Mr. Salinas he had no warrants and instructed him to stand to the side of the vehicle if he wanted to stick around. At this point, the

3

assisting officer informed his colleague about the presence of the knife. Both officers then moved to secure the weapon. Mr. Salinas offered to hand them the knife, but the first officer interlaced Mr. Salinas's fingers behind Mr. Salinas's back and then removed the knife from his pocket.[1] The first officer then asked about any other weapons and Mr. Salinas responded he had brass knuckles. The first officer then removed the brass knuckles from Mr. Salinas's pocket. Because possessing brass knuckles is a crime, Mr. Salinas was placed under arrest.

During a search incident to arrest, the first officer found two smoking pipes and a red bandana on Mr. Salinas's person. Mr. Salinas admitted he was a Norteño gang member. Mr. Salinas needed to use the restroom so the assisting officer transported him to the police department while the first officer remained to search the vehicle pursuant to Mr. Ramirez's consent. On the floorboard under the front passenger seat, the first officer discovered a prescription bottle containing a white substance later confirmed to be methamphetamine. Back at the police station, the assisting officer searched Mr. Salinas for any more contraband before placing him in a holding cell. During this search he discovered another smoking device on Mr. Salinas, this one containing a white powdery

---

[1] After the knife was removed from Mr. Salinas's pocket, the officers determined it was probably not an illegal switchblade. The knife did not contain a spring. *See* RCW 9.41.250(2).

4

substance. The first officer arrived at the station about 20 minutes later[2] and collected

the newly discovered pipe. The first officer then administered *Miranda*[3] warnings and

Mr. Salinas agreed to talk. He admitted the prescription bottle found under the seat was

his and that it contained methamphetamine.

Mr. Salinas was charged with unlawful possession of methamphetamine. He filed

a motion to suppress all evidence seized by the police. The motion was denied. Mr.

Salinas agreed to a stipulated facts bench trial and was subsequently convicted. Mr.

Salinas appeals.

## ANALYSIS

*Denial of CrR 3.6 motion*

An appellate court reviews the denial of a suppression motion by determining

whether substantial evidence supports the challenged findings of fact, and whether the

findings support the conclusions. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266

(2009). Unchallenged findings are treated as verities. *State v. O'Neill*, 148 Wn.2d 564,

571, 62 P.3d 489 (2003). Conclusions of law are reviewed de novo. *Garvin*, 166 Wn.2d

at 249.

---

[2] The delay was due to the officer having to wait for evidence bags and for a tow truck to remove Mr. Ramirez's vehicle from the scene of the traffic stop.
[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Under the United States Constitution, a vehicle passenger is seized anytime law enforcement effects a traffic stop. *Brendlin v. California*, 551 U.S. 249, 255, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007) (abrogating *State v. Mendez*, 137 Wn.2d 208, 970 P.2d 722 (1999)). However, given the enhanced privacy protections afforded by our state constitution, passengers in Washington have a right to remain free from further police intrusion or questions unless law enforcement develops objective reasons for focusing its show of authority on the passenger. *See State v. Flores*, 186 Wn.2d 506, 522-23, 379 P.3d 104 (2016). A focus on the passenger is justified if the objective facts indicate the passenger poses a safety concern, or the officer develops reasonable suspicion to investigate a law violation. *See id*.; *State v. Rankin*, 151 Wn.2d 689, 695, 92 P.3d 202 (2004).

The police first focused on Mr. Salinas when he was asked for identification and then told to stay in the vehicle pending confirmation. At that point, Mr. Salinas was seized beyond what was necessary for the police to perform a traffic stop. Nevertheless, the seizure was justified. The smell of marijuana in the car, coupled with Mr. Salinas's voluntary display of a bag of marijuana, provided the first officer reasonable suspicion that Mr. Salinas may have been involved in the underage consumption of marijuana and that he may have violated Washington's open container law. RCW 46.61.745;

6

former RCW 69.50.4013(4). Thus, the police had cause to detain Mr. Salinas beyond what was necessary for the initial traffic stop of Mr. Ramirez.

Not only did the police have cause to focus their attention on Mr. Salinas, additional circumstances permitted them to prolong Mr. Salinas's detention. During the time that law enforcement had ongoing cause to believe Mr. Salinas had violated Washington's open container law,[4] Mr. Ramirez was removed from the car based on his suspended license violation. Within seconds of Mr. Ramirez's removal, Mr. Salinas made a serious of suspicious movements, suggesting he was trying to hide something.[5] This created an objective basis for the officers' safety concerns. After Mr. Salinas admitted he had a knife on his person, the officers had cause to conduct a protective frisk. *State v. Russell*, 180 Wn.2d 860, 867, 330 P.3d 151 (2014); *State v. Horrace*, 144 Wn.2d

---

[4] The first officer testified on cross-examination that once he confirmed Mr. Salinas's age, he no longer had a basis for detention. However, during the video of the traffic stop, the officer articulated that he had suspected Mr. Salinas of an open container violation. There was never any reason for the officer to have abandoned this suspicion. Because the officer had an objective basis for detaining Mr. Salinas and because there is no indication that the officer affirmatively sought to continue to detain Mr. Salinas for pretextual reasons, the possible inconsistency between the officer's statements at the scene and testimony on cross-examination do not provide a basis for concluding that Mr. Salinas was illegally detained. *Cf. State v. Ladson*, 138 Wn.2d 343, 979 P.2d 833 (1999) (Objectively reasonable detention, motivated by speculative investigatory intent, violates state constitution.).

[5] The description of Mr. Salinas's movements as excessive movements made in an apparent attempt to hide something was not impermissibly vague. *See State v. Weyand*, 188 Wn.2d 804, 816, 399 P.3d 530 (2017).

No. 35110-6-III
*State v. Salinas*

386, 399-400, 28 P.3d 753 (2001). Mr. Salinas was cooperative during the frisk process. As a result of the frisk, the officers discovered brass knuckles. Because possession of brass knuckles is a criminal offense, RCW 9.41.250(1)(a), the officers had grounds to arrest Mr. Salinas and perform a search incident to arrest.

It was during the subsequent searches of the vehicle and Mr. Salinas's person that officers discovered the evidence used to prosecute Mr. Salinas for unlawful possession of methamphetamine. These searches were not predicated on an illegal detention. Accordingly, the trial court was correct to deny Mr. Salinas's suppression motion.

## CONCLUSION

The judgment and sentence of the trial court is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____            _____
Lawrence-Berrey, C.J.                              Fearing, J.

8