# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | No. 77547-2-I |
| Respondent, | |
| v. | DIVISION ONE |
| BRIAN DAVID MARTIN, | UNPUBLISHED OPINION |
| Appellant. | FILED: April 29, 2019 |

LEACH, J. — Brian Martin appeals his convictions for possession of a controlled substance (Alprazolam) and driving under the influence (DUI). He challenges the trial court's denial of his motion to suppress evidence, claiming that the arresting officer lacked probable cause to arrest him. Because substantial evidence supports the trial court's challenged findings of fact showing probable cause, Martin does not show error. We affirm.

## BACKGROUND

### Procedural Facts

Following a vehicle accident, the State charged Martin with possession of a controlled substance, DUI (drugs), and bail jumping. Martin asked the trial court to suppress evidence obtained after his arrest. Martin claimed that the arresting officer did not have probable cause to arrest him. The trial court denied

Martin's request and concluded, based on its 25 factual findings, that the totality of the circumstances provided probable cause to arrest Martin for DUI. After a five-day trial, the jury found Martin guilty as charged. Martin appeals.

Substantive Facts

Witness Merle Humphreys testified at trial that on November 15, 2014, between 9:00 and 10:00 p.m., he was driving southbound on Interstate 5 (I-5) when he saw Martin's Jaguar hit a truck in front of him. Humphreys testified that he was traveling at 75 m.p.h. on cruise control and Martin "flew by [him]." Martin passed Humphreys in the far right lane and "at the last minute he went to veer and . . . clipped the back of the truck and went tumbling down the freeway." Martin's car flipped end to end and came to a stop in the far left lane. Humphreys described the collision as "violent" and stated that he "was surprised that somebody even lived through it. [He] wouldn't have walked over to that car if [he] could have because it looked so mangled." He pulled over to the side of the road. Later, he talked to "the State Patrol [who he] filled out the statement for" at the scene.

Corey Webb, the driver of the truck that Martin hit, testified at trial that he was driving a milk truck tank trailer at about 55 or 60 m.p.h. when he felt Martin's car strike the left rear corner of the truck. After the collision, Webb's truck "had a flat tire, the fender was bent up, and a couple welds were broken on the suspension." Webb talked to "law enforcement" at the scene of the collision.

Antonio Tararan, an off-duty police detective, also saw the collision. He testified at trial that he first saw Martin's car behind him "traveling extremely quickly." Martin's car "got so close" that he could not see Martin's car's headlights in his rearview mirror and thought Martin was going to hit his vehicle. Tararan then saw Martin hit the back of the milk truck. He approached Martin after the collision. He testified that Martin's eyes were watery and he was stumbling and slurring his words. Tararan also remembered that Martin "was very determined to try to find medication in the vehicle." Martin said it was his uncle's medication and then stated that he had changed lanes and someone had hit him. Tararan told Martin that it was Martin who had hit the truck. While Tararan was speaking with Martin, Tararan observed that Martin was trying to pick up a reflector attached to the roadway. Tararan testified that Martin was "very kind of blasé about what had happened. . . . Wasn't really concerned about, you know, was anyone else hurt, you know, what had really happened. It was like, 'We need to find the pill bottle.'" When Trooper John Tyler, the responding officer, arrived, Tararan told Tyler what he had seen.

Tyler testified at the suppression hearing that he received a call about the collision around 9:20 p.m. Tyler stated that he was not and is not a drug recognition expert (DRE), which requires training in addition to the Washington State Patrol (WSP) Academy training and the advanced drug intoxication detection training. He attended six months of basic WSP Academy training, which included 40 hours of DUI investigation training, and some, but not all, of

the WSP advanced training in drug intoxication detection. He had made at least two previous arrests for drug-related DUIs involving a drug other than marijuana.

Tyler testified that when he contacted Martin, "It was very hard to understand what he was saying. It was very—very slurred speech, almost to the point that a lot of it didn't sound like speech so much as just sort of incoherent noises." Tyler described Martin's physical appearance as "[v]ery relaxed, almost to where he looked like . . . he was falling asleep. He seemed to have a really hard time keeping his eyes opened." Tyler described Martin's coordination as "very poor. Seemed to have a very hard time just—staying on his feet." Tyler observed that "[Martin d]idn't seem to understand the severity of the actual collision that had happened." While Tyler and Martin were walking toward Martin's car to retrieve his identification,

> he went over to the shoulder. The front bumper of the car was laying in the median of the interstate, and he walked over to the front bumper, and he was kind of bending over, and trying to grab it while he's trying to stay on his feet. He had to be instructed a couple of times to leave the front bumper. He was trying to drag it with him back towards the car. . . . [H]e was struggling pretty significantly just to lean over to grab the bumper.

Tyler also testified that Martin did not have any "obvious injuries" to his limbs or torso that would explain his lack of coordination, did not complain of any injuries at the time, was generally oriented to their conversation, and provided answers to Tyler's questions. Tyler acknowledged that difficulty staying awake, slurred speech, and lack of balance could be symptoms consistent with a head injury. He observed blood coming from Martin's mouth and hand. The aid crew

assessed Martin at the scene but did not transport him anywhere. Martin testified at the suppression hearing that he was later treated for a head injury and two broken bones in his back.

Tyler affirmed that he "spoke with the witnesses, specifically, [Tararan], to get their version of how the collision occurred." Tyler learned from the witnesses that Martin moved into the right lane to pass traffic and then struck the rear of the truck as he tried to change lanes. Tyler believed that the damage to the front of Martin's Jaguar was from the initial contact with the truck and the damage to the sides and top of the Jaguar appeared fresh because it was not rusted. Tyler also stated that Tararan told him that he had seen Martin grab a prescription pill bottle from the shoulder of the interstate. After his conversation with Tararan, Tyler found an orange prescription pill bottle with no label in the median near the accident scene. The bottle contained several pills, which Martin told Tyler were his paraplegic uncle's pills. Tyler testified that based on his observations and the witnesses' statements, he thought Martin was likely impaired by "some sort of drugs."

Martin consented to provide a sample for the portable breath test (PBT) and did the horizontal gaze nystagmus (HGN) test. The PBT did not show alcohol impairment, and the HGN test did not show nystagmus. But Tyler noted that while he was conducting the HGN test, Martin still had "heavily slurred" speech and was "having a very hard time keeping his eyes open and several

times looked like he was either passing out or falling asleep." Following these tests, Tyler arrested Martin for DUI.

After Martin's arrest, Trooper Anson Statema, a DRE, performed a drug evaluation on Martin and concluded that he was under the influence of a narcotic analgesic like heroin, Oxycodone, or OxyContin. Martin received a blood draw at Providence Hospital after the DRE exam pursuant to a warrant. His blood tested positive for the opiate Oxycodone and the benzodiazepines Alprazolam (Xanax), Diazepam, and Nordiazepam. The Washington State Crime Lab tested the pills in the prescription bottle. They were Alprazolam.

## ANALYSIS

Martin challenges two of the trial court's findings of fact in its order denying his motion to suppress and contends that the court's remaining findings do not support its conclusion that Tyler had probable cause to arrest him. We disagree.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution both require that probable cause support a warrantless arrest.[1] "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed. Probable

---

[1] State v. Inman, 2 Wn. App. 281, 287-88, 409 P.3d 1138, review denied, 190 Wn.2d 1022 (2018).

cause is not a technical inquiry."[2] This determination rests on "the totality of facts and circumstances within the officer's knowledge at the time of the arrest."[3]

When reviewing the denial of a request to suppress evidence, we determine whether substantial evidence presented at the suppression hearing supports the challenged findings of fact and whether the findings support the conclusions of law.[4] "Evidence is substantial when it is enough 'to persuade a fair-minded person of the truth of the stated premise.'"[5] Unchallenged findings are true on appeal.[6] We review conclusions of law de novo.[7]

First, Martin challenges the finding that "Trooper Tyler had direct observation of the defendant. The trooper is not a Drug Recognition Expert, but is qualified to make observations and reach an opinion based on his training and experience." Martin asserts that substantial evidence does not support this finding "to the extent [that it] is meant to indicate Trooper Tyler was qualified to find probable cause at the time of [the] arrest." He states that Tyler had some cause to suspect that he was driving impaired as a result of his slurred speech, difficulty staying awake, and compromised balance. But he contends that Tyler's testimony that these symptoms could have been consistent with a head injury shows Tyler did not have probable cause to arrest him.

---

[2] State v. Terrovona, 105 Wn.2d 632, 643, 716 P.2d 295 (1986).
[3] State v. Fricks, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979).
[4] State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).
[5] Garvin, 166 Wn.2d at 249 (quoting State v. Reid, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)).
[6] State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).
[7] Garvin, 166 Wn.2d at 249.

Consistent with the court's finding, Tyler testified that he interacted with Martin at the scene and was not a DRE. Contrary to Martin's argument, Tyler's observation of symptoms possibly consistent with a head injury does not establish that he could not rely on those and other observations to form an opinion that alcohol or drugs caused Martin's admitted impairment. Tyler completed the basic training that the WSP requires before a trooper may conduct DUI accident investigations. Martin's suppression request raised the constitutional issue of whether Tyler had sufficient evidence of impairment to provide probable cause to arrest Martin, not whether Tyler was qualified to make observations and draw from them opinions about impairment. Substantial evidence supports the court's finding.

Second, Martin challenges the court's finding, "The driving is consistent with operating [a] motor vehicle under the influence. The defendant was driving on I-5 and rear ended [a] milk truck after passing other vehicles on the right. That driving is indicative of impairment." He claims the suppression hearing record does not support a finding that his driving pattern shows impaired driving. But Tyler testified about the observations the witnesses reported to him. And they saw Martin passing vehicles in the far right lane of the interstate at high speed before hitting the back of a milk truck while trying to change lanes. Martin appears to claim that evidence of his aggressive driving is not, in itself, sufficient to establish probable cause. But the trial court did not make this finding. The trial court found that Martin's driving was a piece of evidence that supported a

conclusion that he drove while impaired. The court did not base its probable cause conclusion on just this finding but on the totality of the circumstances known to Tyler. The record supports the court's challenged finding about part of these circumstances.

Last, Martin claims that the trial court's conclusion of law that Tyler had probable cause to arrest him for DUI does not flow from the remaining findings. But because substantial evidence supports the findings that Martin challenges and Martin does not claim that the court's conclusion does not flow from all 25 findings, we do not address this claim. Similarly, because he does not show that his arrest was unlawful, we do not address his claim that the court should not have admitted the results of the DRE evaluation and the blood draw completed after his arrest.

CONCLUSION

Affirmed.

Leach, J.

WE CONCUR:

Mann, ACJ

Dwyer, J.