# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53952-7-II |
| Petitioner, | |
| v. | |
| ROBERT GLEN CARPENTER, | UNPUBLISHED OPINION |
| Respondent. | |

SUTTON, A.C.J. — The State appeals the trial court's order disqualifying the entire Pierce County Prosecuting Attorney's Office (PAO) from prosecuting Robert Carpenter in a first degree assault case. There has never been an allegation that the Pierce County elected prosecutor had a conflict, but that Pierce County deputy prosecuting attorneys (DPAs) have had conflicts. The State argues that (1) the trial court erred by granting Carpenter's motion to disqualify the entire PAO when there were effective screening methods used by the DPAs from the inception of the assault case, and (2) public policy disfavors disqualification of an entire prosecuting attorney's office.[1] We hold that the trial court abused its discretion by granting Carpenter's motion to disqualify the entire PAO from prosecuting Carpenter when there were effective screening methods employed by the DPAs in the PAO. We reverse and remand for further proceedings consistent with this opinion.

---

[1] We do not address the State's public policy argument.

FACTS

A  CARPENTER'S EMPLOYMENT

At the time of the incident at issue, Carpenter was employed as a Sergeant with the Pierce County Sheriff's Office. Since 2008, he was the lead defensive tactics instructor for the sheriff's office. He was an expert witness in a case in 2009 prosecuted by DPAs Michelle Luna Green and Alicia Burton. In 2014, Carpenter was sued for alleged excessive use of force.[2] Carpenter spent "significant time" with the attorney representing him, Sean-Michael Davis of the PAO, and Carpenter discussed a wide variety of topics with Davis, including his defense philosophies.[3] Clerk's Papers (CP) at 33. Finally, during his time with the sheriff's office, Carpenter conducted use of force and defensive tactics training for new-hire and in-service personnel, and at least four DPAs attended those trainings.

B. CURRENT CASE

On October 5, 2018, officers were dispatched to a reported stabbing in progress. Carpenter, who was off-duty at the time, and Samuel Corales were in the front seats of a car, and Corales' hands were covered in blood. The State's theory of the case is that Carpenter, Corales, and a third individual met earlier in the evening and consumed alcohol together before deciding to purchase marijuana and book a hotel room. The State alleges that Carpenter displayed his handgun and a fight ensued, resulting in Carpenter stabbing Corales.

---

[2] The case was *Duckworth v. Pierce County*, W.D. Wash. 2:14-cv-01359, 2:14-cv-01361. The DPAs representing Carpenter filed their notice of appearance on September 4, 2014, and the case was dismissed on summary judgment on September 19, 2016.

[3] In his declaration, Carpenter first refers to multiple attorneys who represented him, but he only names Davis.

On December 12, 2018, the PAO charged Carpenter with assault in the first degree. At that time, Mark Lindquist was the elected prosecuting attorney. Carpenter's case was initially screened by the Kitsap County Prosecuting Attorney's Office and assigned to Kitsap County DPA Coreen Schnepf. This screening was not done due to an alleged conflict of interest, nor did the court find one subsequently.

In January 2019, Mary Robnett became the newly elected prosecutor for the PAO. In March 2019, she hired Schnepf as a DPA, who remained assigned to prosecute Carpenter. One week later, Pierce County DPA Jonathan Salamas was also assigned to prosecute Carpenter. Salamas had been employed previously with the Washington State Attorney General's Office, but began working at the PAO in February 2019.

At the September 27, 2019, trial readiness hearing, Carpenter's counsel raised a possible conflict of interest issue for the first time. The court continued the trial readiness hearing one week to allow Carpenter time to file briefing on the conflict issue and continued the trial to October 16, at both parties' request.

Carpenter filed his motion to disqualify, which he called the "memorandum of authorities." CP at 30. Carpenter argued that under RPC 1.7(a) and RPC 1.9, the PAO must be disqualified. He argued that the current criminal case was analogous to *Duckworth*, where the plaintiff alleged Carpenter used excessive force as a law enforcement officer, and that "confidential client communications with the [PAO] would unfairly benefit the State in this prosecution." CP at 32. Carpenter attached to his motion a declaration consistent with the facts described above.

The State responded to Carpenter's motion and argued that disqualification was unnecessary. In its response, the State attached a declaration from Salamas, a declaration from Schnepf, and a declaration from Daniel Hamilton, one of the civil DPAs initially assigned to represent Carpenter in *Duckworth*. Salamas and Schnepf stated in their declarations that before Carpenter filed the motion, neither of them was aware of the *Duckworth* case or that Carpenter had ever testified as an expert witness, and that upon learning of this, they contacted Hamilton. They did not review any other records from the civil division of the PAO, including those regarding *Duckworth*, and they did not discuss Carpenter's case with anybody from the civil division. Salamas spoke with a computer business systems analyst for the PAO, who informed Salamas that "[DPAs] assigned to the criminal division cannot access internal []PAO civil division files, databases, or case information." CP at 22.

Hamilton had no recollection of Carpenter's civil case, and he had only briefly represented him by filing a notice of appearance and moving to remove *Duckworth* from King County Superior Court to federal court. Another attorney, Davis, litigated the case alone for its duration until it was dismissed in 2016. Davis left the PAO in 2017. Hamilton also stated that he had contact with Salamas and Schnepf only to the extent necessary to determine whether he had, in fact, represented Carpenter in *Duckworth*.

Neither party offered any evidence to suggest that either elected prosecutor, Lindquist or Robnett, was personally conflicted.

On October 9, 2019, the trial court held a hearing on Carpenter's motion. The court granted the motion and disqualified the entire PAO based on the "long period of representation" by the PAO in *Duckworth* and Carpenter's experience in 2009 "as an expert witness in other cases" citing

4

No. 53952-7-II

*State v. Nickels*, 7 Wn. App. 2d 491, 434 P.3d 535 (2019), *aff'd*, 195 Wn.2d 132, 456 P.3d 795

(2020). Verbatim Report of Proceedings (VRP) (Oct. 9, 2019) at 13-14.

> I think that under these facts, the office should be disqualified. I think the appearance of it – even though everyone would act in good faith, and even though I know the civil section does have a separate computer system, but we all know how information travels within an office, especially someone who the office has represented and defended previously and used as an expert witness now becomes charged in a serious criminal case, I just think the appearance of that results in the disqualification.

> I do appreciate the briefing material that went into it. I think it's a close call, but I think it would be a terrible waste of resources to have to retry this case because, if on appeal, it gets reversed because the office wasn't disqualified.

VRP (Oct. 9, 2019) at 14-15.

> The court then entered the following written findings of fact (FF):

> 1. On 10.4.18, [Carpenter] was involved in an altercation in a parking lot, in Tacoma, Wa., that led to the instant charges.

> 2. On 10.4.18, [Carpenter] was employed by the Pierce County Sheriff's Department (PCSO) as a Sgt.

> 3. After fielding the case in Thurston County, the Thurston office declined review.

> 4. The investigation was then sent to Kitsap for review by their prosecutor's office.

> 5. Following the review of the Kitsap prosecutors office, on 12.12.18, this case was charged by Information, charging one count of felony assault.

> 6. [Carpenter] has been employed by PCSO for 2+ decades.

> 7. While employed by PCSO, [Carpenter] has been represented by the [PAO] in a federal law suit that was dismissed approximately 2 years after it was filed. The claim against [Carpenter] was for excessive force, and the allegation was analogous to the instant charges. Throughout the course of said representation, [Carpenter] shared confidential communications with the [PAO], dealing with same/similar issues as those now at bar.

5

8. [Carpenter] also testified for the County of Pierce as a use of force expert, engaging in strategic and confidential communications.

9. The Court finds that, even though the civil section of the [PAO] has a separate computer system, information still travels within that office. Moreover, some of the prosecutors who dealt with/represented [Carpenter] are still employed in the office.

10. It would be a terrible waste of resources to have to retry the instant case in the event it were reversed on appeal.

CP at 39-40. Based on these findings, the court entered the following conclusions of law (CL):

1. The Court has jurisdiction over the parties and the subject matter.

2. The Rules of Professional Conduct mandate when an office is personified, and in this case the Pierce County Prosecutors Office has a conflict prosecuting [Carpenter].

3. This conflict arises as a result of the [PAO] prior representation of [Carpenter] in a same or similar civil allegation in federal court, to include [Carpenter's] prior employment by said office in the capacity as a use of force expert.

CP at 40.

We granted the State's motions for discretionary review and to stay proceedings in the trial court pending review

ANALYSIS

I. DISQUALIFICATION

The State argues that the trial court abused its discretion by disqualifying the entire PAO because (1) the one remaining attorney who worked on *Duckworth* was effectively screened from Carpenter's prosecution in this case, (2) the plain language of the RPCs provides that the conflict of one DPA does not impute the entire office so long as the elected prosecutor has no conflict, and (3) substantial evidence does not support the trial court's findings of fact and they do not support

6

the court's conclusion to disqualify the entire office. We hold that the trial court abused its discretion by disqualifying the entire PAO when there were effective screening methods used and neither the criminal DPAs involved nor the elected prosecutor in the present case has an actual or perceived conflict of interest.

A.  STANDARDS OF REVIEW

We review a trial court's decision to grant or deny a motion to disqualify an attorney for an abuse of discretion. *State v. Orozco*, 144 Wn. App. 17, 19, 186 P.3d 1078 (2008). Whether an attorney's conduct violates the relevant RPCs is a question of law that we review de novo. *Nickels*, 195 Wn.2d at 136.

A trial court abuses its discretion if its decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported by the record or was reached by applying the wrong legal standard. *Rohrich*, 149 Wn.2d at 654. A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, reaches an outcome that is outside the range of acceptable choices, such that no reasonable person could arrive at that outcome. *Rohrich*, 149 Wn.2d at 654.

We review challenged findings of fact to determine whether they are supported by substantial evidence. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Substantial evidence exists when there is sufficient evidence in the record "'to persuade a fair-minded person of the truth of the stated premise.'" *Garvin*, 166 Wn.2d at 249 (quoting *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)). Unchallenged findings of fact are verities on appeal. *State v.*

*O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). We review conclusions of law de novo. *Garvin*, 166 Wn.2d at 249.

B.  DISQUALIFICATION

The general rule is that when the elected prosecutor previously has represented the defendant "in either the same case or another closely interwoven matter," disqualification of the entire prosecutor's office is presumptively proper. *Nickels*, 195 Wn.2d at 138 (citing *State v. Stenger*, 111 Wn.2d 516, 522, 760 P.2d 357 (1988)). In *Stenger*, our Supreme Court reversed the trial court's order denying disqualification of the entire prosecuting attorney's office when the elected prosecutor had previously represented the defendant. 111 Wn.2d at 517. The court distinguished, however, cases where the DPA may have a conflict:

> [W]here a deputy prosecuting attorney is for any reason disqualified from a case, and is thereafter effectively screened and separated from any participation or discussion of matters concerning which the deputy prosecuting attorney is disqualified, then the disqualification of the entire prosecuting attorney's office is *neither necessary nor wise*.

*Stenger*, 111 Wn.2d at 522-53 (emphasis added).

Here, because the elected prosecutor did not personally represent Carpenter on any prior matters, the presumptive office-wide disqualification rule in *Nickels* and *Stenger* does not apply. Instead, the issue is whether the assigned DPAs in Carpenter's criminal case were effectively screened and separated from the prior civil case, *Duckworth*, as well as from any training or expert testimony that Carpenter engaged in.

The RPCs were substantially amended in 2006, effective September 1, 2006. *See* Amendments to RPC 1.10 and 1.11 (2006). The amendments to RPC 1.10 and 1.11 provide for screening to avoid disqualification of an entire prosecutor's office based on a conflict of an

attorney. RPC 1.10(d); RPC 1.11 cmt. 2. RPC 1.10(d) states the "disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11." Comment 2 to RPC 1.11 states that "paragraph (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees," recognizing the special problems created by office-wide disqualification within a government agency and stating, in relevant part, "ordinarily it will be prudent to screen such lawyers."

The Supreme Court explained the amendments to the RPCs in *Nickels*. 195 Wn.2d at 138. "The amendments to RPC 1.10(d) and RPC 1.11 comment 2 enumerated a general rule for imputation of conflicts of interest between government attorneys and their offices that we read in harmony with *Stenger*'s narrow rule." *Nickels*, 195 Wn.2d at 138.[4] An attorney is now effectively screened from a case "through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the . . . lawyer . . . is obligated to protect." RPC 1.0A(k). But DPA conflicts do not trigger office-wide disqualification.[5]

C. ANALYSIS

First, it is undisputed that the elected prosecutor does not have any conflict. And the evidence showed that the two DPAs assigned to Carpenter's criminal case, Salamas and Schnepf,

---

[4] *Nickels* has a 4-justice lead opinion, with a fifth justice concurring in Parts 2 and 3 of the lead opinion only, and four other justices dissenting. The quotes and cites to *Nickels* are from the four-justice lead opinion that received a plurality of the votes.

[5] Both the lead opinion and the dissent in *Nickels* establish this principle. 195 Wn.2d at 137-38, 147.

were de facto screened and separated from the assigned DPA's work in *Duckworth*. Salamas and Schnepf were unable to access any information from *Duckworth* because they could not access civil case files, and Davis, the DPA who represented Carpenter in *Duckworth*, was no longer employed with the PAO at the time the current criminal case was filed. Salamas and Schnepf also both declared that they had no discussions with Hamilton regarding *Duckworth*. Further, the criminal DPAs worked in a different computer system than that of the civil DPAs, and neither group has access to the other's database. The record established that the two divisions did *not* share information in any capacity.

The trial court found that "the civil section of the [PAO] has a separate computer system," but nevertheless, "information still travels within that office." CP at 40; FF 9; *see also* VRP (Oct. 9, 2019) at 14. But there was no evidence that established that any information about *Duckworth* or Carpenter's criminal case somehow traveled between the civil and criminal divisions within the office, and thus, this finding is not supported by substantial evidence.

Second, Hamilton, the original attorney who represented Carpenter in *Duckworth*, filed a declaration stating that Davis primarily represented Carpenter in *Duckworth*, and that Davis alone litigated the case until its dismissal. Hamilton further declared that his involvement in the case was brief, and that he had no recollection of the case or of any discussions with Carpenter. Hamilton also declared that his only discussions with either Salamas or Schnepf regarding *Duckworth* were to confirm whether Hamilton or anybody else in the civil division had represented Carpenter.

Third, the trial court found that "some of the prosecutors who dealt with/represented [Carpenter] are still employed in the office." CP at 40; FF 9. But, as discussed above, Salamas

and Schnepf were effectively screened from any attorney who worked on *Duckworth*, and thus, imputation was not required here.

Nor does Carpenter's declaration dispute these facts or allege that any other attorneys were involved in his case. In his declaration, Carpenter states that he was an expert witness in one case in 2009. However, an attorney does not represent his or her witnesses, which fact the trial court acknowledged. Thus, the trial court's finding of fact 9 is not supported by the evidence.

Fourth, the PAO employed effective screening mechanisms to ensure information did not travel between divisions. The criminal DPAs assigned to the present criminal case were screened from all civil matters involving Carpenter from the inception of the criminal case. The criminal and civil divisions maintained separate files and databases and did not share or communicate about Carpenter, with one exception. The criminal DPAs assigned to Carpenter's criminal case only became aware that Carpenter had a prior civil lawsuit involving the PAO when Carpenter's attorney told them about it prior to filing the motion to disqualify. The trial court's finding that "the civil section of the [PAO] has a separate computer system," but nevertheless, "information still travels within that office" assumes that DPAs and their staff will ignore a screen required by ethics rules. CP at 40; FF 9. There is nothing in the RPCs or the case law that supports such an assumption. And it is remarkable in that this finding assumes the DPAs and staff members will act unethically.

Fifth, the court misapplied the law and the RPCs in its oral ruling and in its written findings of fact. The court erroneously concluded that "[t]he Rules of Professional Conduct mandate when an office is personified, and in this case the [PAO] has a conflict prosecuting [Carpenter]." CP at 40; CL 2. This is in direct conflict with RPCs 1.10 and 1.11, and with *Stenger* and *Nickels*, which

provide that any conflict is not imputed within a government office.  111 Wn.2d at 522-53; 195 Wn.2d at 137-38, 147.  The entire PAO should not be disqualified under the rules.

The PAO properly screened the criminal DPAs handling the current criminal charges from the other DPA in the office who handled the *Duckworth* civil lawsuit, the PAO complied with the RPC 1.11 and disqualifying the entire PAO was not required here.  We hold that the trial court abused its discretion by granting Carpenter's motion to disqualify the entire PAO.

D.  ADDITIONAL FINDINGS OF FACT

The State also assigns error to the following additional findings of fact: 1, 3, 4, 6, and 10. We hold that these findings of fact are not supported by substantial evidence.

1.  Finding of Fact 1

Finding of fact 1 states that the altercation at issue in this criminal case occurred on October 4, 2018.  This is unsupported by the evidence, as both the information and the declaration for probable cause list the date as October 5, 2018.

2.  Finding of Fact 3

Finding of fact 3 states that "[a]fter fielding the case in Thurston County, the Thurston office declined review."  CP at 39.  This is also unsupported by the evidence.  At the presentation hearing for the order disqualifying the PAO, the State objected to this finding and informed the trial court that nothing in the pleadings supported the assertion that this case was ever sent to Thurston County.  The court responded, "I think I specifically asked, because I recall when the case occurred, that it had gone to Thurston County originally."  VRP (Oct. 18, 2019) at 7.  Aside from Carpenter's counsel briefly mentioning Thurston County after the court issued its ruling, nothing in the record supports this finding of fact.

3.  Finding of Fact 4

Finding of fact 4 states that "[t]he investigation was then sent to Kitsap for review by their prosecutor's office."  CP at 39.  For the reasons listed above, this finding is also unsupported by the evidence to the limited extent that it suggests the case was first sent to Thurston County.

4.  Finding of Fact 6

Finding of fact 6 states that Carpenter "has been employed by PCSO for 2+ decades."  CP at 39.  The record only establishes that Carpenter has been employed by PCSO since 2008.

5.  Finding of Fact 10

Finding of fact 10 states that "[i]t would be a terrible waste of resources to have to retry the instant case in the event it were reversed on appeal."  CP at 40.  This is not a finding based on any evidence in the record; if anything, it is the trial court's opinion.

No. 53952-7-II

CONCLUSION

We reverse and remand with further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Sutton, A.C.J._
SUTTON, A.C.J.

We concur:

_Maxa, J._
MAXA, J.

_Glasgow, J._
GLASGOW, J.