IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35369-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| DAVID EMERSON NICKELS, | ) | |
| | ) | |
| Petitioner. | ) | |

PENNELL, J. — When an attorney transitions from representing individual clients to the position of elected prosecutor, conflicts of interest can arise, restricting not only the attorney's ability to work on a given case, but also necessitating recusal of the entire prosecutor's office. The standard set by the Washington Supreme Court is that when an elected prosecutor has previously represented a criminally accused person in a case that is

the same, or substantially the same, as the one currently pending prosecution, the entire

prosecutor's office should ordinarily be disqualified from further participation.

The questions raised by Mr. Nickels's appeal are whether the Supreme Court's

office-wide recusal standard contemplates a bright-line rule and, if not, what

circumstances can disentangle an elected prosecutor's need for recusal from that of the

prosecutor's office. We hold that a prosecutor's office is not subject to bright-line recusal

rules. While office-wide recusal under the Supreme Court's test is the norm, an exception

can exist in extraordinary circumstances. Extraordinary circumstances are informed not

by the nature of the elected prosecutor's current activities, but by his or her prior work

as counsel, including (1) whether the prosecutor was privy to privileged information and

(2) the nature of the case giving rise to the elected prosecutor's conflict of interest.

Here, Grant County Prosecuting Attorney Garth Dano previously represented

David Nickels in a first degree murder case that remains pending in Grant County

Superior Court. Mr. Dano's work caused him to be privy to confidential work product

and attorney-client information. Given this circumstance, coupled with the seriousness of

Mr. Nickels's criminal charge, extraordinary circumstances do not justify differentiating

Mr. Dano's conflict of interest from that of the entire Grant County Prosecuting

Attorney's Office. Instead, the general rule applies and the entire prosecutor's office

must be recused along with Mr. Dano. The trial court's order to the contrary is reversed.

BACKGROUND

In 2012, a Grant County jury convicted David Nickels of first degree murder. Deputy prosecutors Tyson Hill and Edward Owens handled the case under the supervision of Grant County's elected prosecutor, D. Angus Lee.

Mr. Nickels was represented by Seattle-based attorneys Mark Larranaga and Jacqueline Walsh. Because they worked remotely, Mr. Nickels's attorneys sought local assistance from then-private attorney Garth Dano. According to an uncontested affidavit by Ms. Walsh, defense counsel routinely consulted with Mr. Dano about a wide range of matters regarding Mr. Nickel's defense, including defense strategy, theory of the case, potential witnesses and jury selection. Ms. Walsh states Mr. Dano was considered a consulting defense attorney on the case and "as such all confidences and communications fell under the attorney client, work product doctrine." Clerk's Papers at 179.

On September 4, 2012, Mr. Dano entered a notice of association of counsel so that he could represent Mr. Nickels while Mr. Larranaga and Ms. Walsh attended to matters out of state. Mr. Dano subsequently appeared in court with Mr. Nickels for a jury question and when the jury returned its verdict. Mr. Dano did not provide any substantive input at the time of the jury question or the verdict. However, after the verdict, Mr. Dano met with Mr. Nickels to discuss the case.

3

In November 2014, while Mr. Nickels's case was pending appeal, Mr. Dano was elected as the Grant County Prosecuting Attorney. Mr. Dano took office in January 2015. The Grant County Prosecuting Attorney's Office did not handle Mr. Nickels's appeal. Instead it contracted with the Kitsap County Prosecuting Attorney's Office for the appointment of two of its deputies, pursuant to RCW 36.27.040, as special deputy prosecuting attorneys for Grant County. Contract details were arranged several months prior to Mr. Dano's election.

In early 2017, this court reversed Mr. Nickels's first degree murder conviction based on instructional error.[1] On remand, the case was assigned to Grant County deputy prosecutors Kevin McCrae and Edward Owens. Mr. Dano was recused from the case, and has had no participation at any time during his tenure as the prosecuting attorney.

After Mr. Nickels's case was remanded to superior court, defense counsel moved to disqualify the entire Grant County Prosecuting Attorney's Office from further participation based on Mr. Dano's conflict of interest. The trial court denied the motion; but, recognizing there were substantial grounds for a difference in opinion, the court certified its order for immediate appellate review under RAP 2.3(b)(4). We granted discretionary review.

---

[1] *State v. Nickels*, No. 31642-4-III (Wash Ct. App. Feb. 28, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/316424_unp.pdf.

4

ANALYSIS

The issue in this case is narrow. The parties agree the elected prosecutor, Garth

Dano, has a disqualifying conflict of interest and must be recused from Mr. Nickels's

case. The only issue to be decided is whether Mr. Dano's entire office must be recused

as well. Our review is de novo. *State v. Greco*, 57 Wn. App. 196, 200, 787 P.2d 940

(1990).

The lead authority governing our analysis is *State v. Stenger*, 111 Wn.2d 516,

760 P.2d 357 (1988). *Stenger* addressed the issue of when, under the Rules of

Professional Conduct (RPC), an elected prosecutor's conflict of interest must be imputed

to the balance of the prosecutor's office. The *Stenger* court articulated the following

standard:

> Where the prosecuting attorney (as distinguished from a deputy prosecuting
> attorney) has previously personally represented the accused in the same case
> or in a matter so closely interwoven therewith as to be in effect a part
> thereof, the entire office of which the prosecuting attorney is administrative
> head should ordinarily also be disqualified from prosecuting the case and a
> special deputy prosecuting attorney appointed. This is not to say, however,
> that anytime a prosecuting attorney is disqualified in a case for any reason
> that the entire prosecuting attorney's office is also disqualified. Where the
> previous case is not the same case (or one closely interwoven therewith)
> that is being prosecuted, and where, for some other ethical reason the
> prosecuting attorney may be totally disqualified from the case, if that
> prosecuting attorney separates himself of herself from all connection with
> the case and delegates full authority and control over the case to a deputy
> prosecuting attorney, we perceive no persuasive reason why such a
> complete delegation of authority and control and screening should not be

5

honored if scrupulously maintained.

111 Wn.2d at 522 (footnote omitted).

The parties dispute the nature of the *Stenger* standard. According to Mr. Nickels, *Stenger* sets a bright-line rule, requiring office-wide recusal whenever an elected prosecutor has a conflict of interest based on prior representation of a client in the same or similar case as the one currently pending prosecution. The State claims *Stenger* articulated only a general standard, and that office-wide recusal is not required in extraordinary circumstances.

## Stenger *did not create a bright-line recusal rule*

*Stenger*'s imputed recusal standard comes close to creating a bright-line rule, but it ultimately falls short. For one thing, *Stenger*'s analysis is couched in qualified language. In announcing the standard for recusal of a prosecutor's office, *Stenger* used the auxillary verb "should;" not "shall" or "must." *Id.* In so doing, the decision indicated that recusal of an entire office is not always required, even when the elected prosecutor himself or herself must be recused based on prior representation in the same case.

In addition to *Stenger*'s qualified language, the decision did not purport to change the written RPCs, which specifically exclude government agencies from bright-line rules of imputed conflicts. As recognized in *Stenger*, 111 Wn.2d at 522-23 & n.15, a conflict based on a private attorney's prior representation is automatically imputed to other

attorneys in the same law firm.  RPC 1.10.[2]  But there is no similar rule for government

lawyers.  *See* RPC 1.11.[3]  Instead, the conflict rules for government lawyers are assessed

more narrowly, according to each lawyer's individual circumstances.  *Id.*

Given an elected prosecutor's administrative duties, *Stenger* recognized that an

elected prosecutor's individual circumstances generally will require recusal of the entire

prosecuting attorney's office.  But, because no per se recusal rule exists for public service

attorneys, there is the possibility of an exception, based on the individual circumstances

_____

[2] At the time of *Stenger*, RPC 1.10(a) provided as follows: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rules 1.7, 1.8(c), 1.9, or 2.2." Former RPC 1.10(a) (1987).  The same provision now states, "Except as provided in paragraph (e) [regarding waiver], while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the disqualified lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." RPC 1.10(a).

[3] At the time of *Stenger*, the applicable rule stated, "Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not . . . [p]articipate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful designation may be, authorized to act in the lawyer's stead in the matter." Former RPC 1.11(c)(1) (1987).  The relevant provision now states, "Except as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee: (1) is subject to Rules 1.7 and 1.9; and (2) shall not: (i) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless the appropriate government agency gives its informed consent, confirmed in writing." RPC 1.11(d).

7

of the elected prosecutor.

Stenger's *office-wide recusal rule does not apply in extraordinary circumstances.*

Rather than a bright-line rule, we interpret *Stenger* as setting a general standard that an elected prosecutor's prior representation of the accused in the same or similar case will ordinarily require office-wide recusal, but an exception can apply in extraordinary circumstances. The question left unanswered by *Stenger* is what constitutes extraordinary circumstances.

### *Extraordinary circumstances are not informed by the level of participation as a prosecutor*

The State posits that the nature of an elected prosecutor's current activities are relevant to the issue of extraordinary circumstances. It points out that the elected prosecutor in *Stenger* had taken official actions in support of his former client's prosecution, including communicating with the press, being present at law enforcement briefings, and receiving updates on the case from deputy prosecutors. 111 Wn.2d at 519. In contrast, Mr. Dano has never been involved in any aspect of Mr. Nickels's prosecution. The decision to charge Mr. Nickels was handled by a prior administration and Mr. Dano has been completely screened from all information regarding the prosecution of Mr. Nickels by deputy prosecutors.

We find the elected prosecutor's current activities irrelevant to the question of extraordinary circumstances. Whether an elected prosecutor has participated in an ongoing case against a prior client goes to the issue of screening. Effective screening is not an extraordinary circumstance. It is an ordinary requirement, applicable to all types of conflicts regardless of the identity of conflict holder. *Id.* at 522-23 (Screening, as opposed to office-wide recusal, is required when a prosecuting attorney is conflicted for reasons other than prior representation in the same case.); Washington State Bar Association (WSBA) Advisory Opinion 1773 (1997) (Screening is required when a conflict is held by a deputy prosecuting attorney.). We therefore must look beyond an elected prosecutor's work as a prosecutor to discern the nature of *Stenger*'s extraordinary circumstances standard.

*Extraordinary circumstances are informed by the prior representation*

Rather than being informed by the nature of an elected prosecutor's current work as a prosecutor, we interpret *Stenger*'s extraordinary circumstances standard to be focused on the elected prosecutor's prior work as counsel for the accused. Two aspects of an elected prosecutor's prior work are salient: (1) whether the elected prosecutor's prior work involved acquisition of privileged work product and/or confidential attorney-client information, and (2) the nature of the case giving rise to the elected prosecutor's conflict of interest.

9

In announcing a general standard for imputed conflicts, *Stenger* was primarily concerned with protecting "privileged information." 111 Wn.2d at 521-22. *Stenger* was a death penalty prosecution. The elected prosecutor had previously represented Mr. Stenger in an unrelated case. The Supreme Court recognized that had Mr. Stenger been charged with an ordinary felony, the elected prosecutor's prior representation would not have created a conflict of interest. However, because a death penalty prosecution involves an assessment of an accused's past, including "earlier criminal and antisocial conduct," there was a danger that the current prosecution could be tainted by "privileged information obtained by the prosecuting attorney when he was the defendant's counsel." *Id.*

*Stenger* relied heavily on *State v. Laughlin*, 232 Kan. 110, 652 P.2d 690 (1982), which also emphasized a concern for privileged information. According to the Kansas rule set out in *Laughlin*, the test for recusal of a prosecuting attorney and his office turns completely on access to confidential information. In Kansas, recusal of an entire prosecutor's office is required if "by reason of his [or her] prior professional relationship with the accused, [the prosecuting attorney] has obtained knowledge of facts upon which the later case is predicated or facts which are closely interwoven therewith." *Id.* at 114. If no material confidences were shared during the prior representation, disqualification is not required. *Id.*

10

Given *Stenger*'s emphasis on protecting privileged information, it is apparent that the existence of confidential attorney-client communications is relevant to the extraordinary circumstances analysis. Generally, an attorney's representation of a client will involve acquisition of privileged information through confidential communications. Thus, an elected prosecutor and his or her office will typically need to be recused from prosecuting a case in which the elected prosecutor previously served as defense counsel. But in unusual circumstances, the elected prosecutor's prior representation may have been so brief, or so attenuated, that no confidential communications were shared. Such circumstances would be extraordinary and might not necessitate recusal of the entire prosecutor's office.

Apart from the concern for privileged information, we recognize the *Stenger* standard as also informed by the nature of the case under prosecution. Because *Stenger* was a death penalty prosecution, there was a "heightened 'need for reliability in the determination that death [was] the appropriate punishment.'" *State v. Clark*, 143 Wn.2d 731, 761, 24 P.3d 1006 (2001) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976)). Given the significant commitment of resources necessary for a death penalty prosecution, it is difficult to imagine that an elected prosecutor, tasked with prioritizing a county's prosecution resources, can ever be fully walled off from a death penalty prosecution. It is perhaps for this reason that in 1997 the

11

WSBA's RPC Committee[4] issued an advisory opinion, stating that, in death penalty cases, recusal of an elected prosecutor based on prior representation in the same criminal case must result in recusal of the prosecutor's office as a whole. WSBA Advisory Opinion 1773 (1997). But in less significant prosecutions, there is a greater chance that an elected prosecutor could be effectively walled off from a case brought by his or her office. We therefore discern the nature of the case as relevant to *Stenger*'s extraordinary circumstances standard.

Our assessment of the importance of the nature of the case under prosecution finds support in the commentary to Washington's RPCs. As recognized by the comment to RPC 1.11, the question of whether or how recusal should apply to a government agency involves "a balancing of interests." RPC 1.11 cmt. 4. Although steps must always be taken to protect client confidences, the recusal standard should not be so broad as to limit the pool of qualified attorneys who might work in government service. *Id.* This concern for the governmental talent pool applies to elected prosecutors. By taking the nature of a prior case into account, *Stenger*'s exceptional circumstances standard provides space for a greater pool of potential elected prosecutors including, for example, a defense attorney

___

[4] The RPC Committee was the predecessor of the current WSBA Committee on Professional Ethics. Advisory opinions of these committees are based solely on the RPCs, of which the Washington Supreme Court is the ultimate arbiter.

whose practice has focused on misdemeanor work or the supervisor in a public defender's

juvenile unit. Under a flexible *Stenger* standard, individuals involved in routine defense

cases would be free to seek election as prosecuting attorney without raising the concern

that the county would be burdened by a significant number of office-wide recusals.

> *Extraordinary circumstances do not permit continued prosecution by the Grant County Prosecuting Attorney's Office*

Having discerned two factors relevant to our analysis, we find no extraordinary

circumstances that would excuse the Grant County Prosecuting Attorney's Office from

being conflicted out of Mr. Nickels's case. It is uncontested, based on Ms. Walsh's

affidavit, that Mr. Dano was privy to privileged work product information during his

association with Mr. Nickels's defense team. In addition, because Mr. Dano met with

Mr. Nickels individually after entry of the jury verdict, he presumably engaged in

confidential attorney-client communications. If Mr. Nickels were merely facing a low-

profile misdemeanor charge, Mr. Dano's work on the case might not have created the

need for office-wide recusal. In such a circumstance, Mr. Dano's conflict might have

been sufficiently handled by instituting screening mechanisms. But Mr. Nickels is

charged with first degree murder. While this is not a death penalty case, the charge

against Mr. Nickels is of great significance. No amount of screening can be sufficient to

fully wall off Mr. Dano from the case or prevent him from being cognizant of the

13

resources being committed to Mr. Nickels's case, and thus not devoted to other office priorities. Given the foregoing circumstances, Mr. Dano's conflict of interest and need for recusal must extend to the entire Grant County Prosecuting Attorney's Office.

## CONCLUSION

Because Mr. Nickels has been charged with a serious offense, the same offense about which the Grant County Prosecuting Attorney has acquired privileged information through work product and attorney-client communications during his time as a private attorney, the entire Grant County Prosecuting Attorney's Office must be recused from Mr. Nickels's first degree murder prosecution. The trial court's ruling to the contrary is reversed. Mr. Nickels's case is remanded to the trial court for further proceedings consistent with this decision.

_____
Pennell, J.

I CONCUR:

_____
Lawrence-Berrey, C.J.

14

No. 35369-9-III

KORSMO, J. (dissenting) — Although I agree with much of what the majority writes, my concern is that the test adopted is too narrow and operates as a per se standard. The likely outcome is that no small county attorney with significant practice involving the county government, nor a head public defender in any county, could become the elected prosecutor without causing severe conflict of interest problems. Mr. Dano's token appearance at the end of the first trial rightly leads to his exclusion from the prosecution of his former client, but screening him from the retrial of this case is an adequate remedy. There is no need for recusal of the entire prosecutor's office for the retrial of a case previously prosecuted by another administration.[1]

I agree with the majority that this case is controlled by *State v. Stenger*, 111 Wn.2d 516, 760 P.2d 357 (1988). I also agree with the majority's construction of the *Stenger* dicta[2] concerning recusal of the entire prosecutor's office when the elected prosecutor

---

[1] Interestingly, this court once decided that a trial judge did not have to recuse from a criminal case even though he had both defended and prosecuted the defendant in earlier cases. *State v. Dominguez*, 81 Wn. App. 325, 914 P.2d 141 (1996). A former client's secrets can more easily be used against him by a judge than by an attorney.

[2] *Stenger* involved a death penalty prosecution of the defendant for aggravated murder; the elected prosecutor had previously represented the defendant a decade earlier in a different case. 111 Wn.2d at 518. Thus, the discussion of how to address the elected prosecutor's representation of the defendant in the same case his new office was prosecuting technically is dicta, though it was understandable that the court would use the opportunity to opine on a problem that could easily arise.

previously represented the defendant in the same case—"ordinarily" the entire office will be recused. *Id.* at 522. However, I see nothing in that language suggesting that only "extraordinary" circumstances will justify a remedy other than recusal of the entire office; rather, recusal is the presumptive remedy. However, RPC 1.11 provides for screening of conflicted government attorneys, not recusal of the entire office.

Instead, I think the key to *Stenger* is found in the paragraphs of the opinion following the one emphasized by the majority. Noting that there is a significant difference in imputing disqualification in the government sphere than in the private firm context, the court opined, also in dicta, that screening ordinarily will be the remedy when a deputy prosecutor has a conflict of interest. *Stenger*, 111 Wn.2d at 522-23. The court then finally turned to the issue of the elected prosecutor's actions in that case:

> Under the facts of the case before us, although the prosecuting attorney did eventually delegate handling of the case to a deputy prosecuting attorney in his office, he did not effectively screen and separate himself from the case but instead maintained quite close contact with it. We need go no further in this capital case in order to conclude that it is appropriate that a special prosecuting attorney be appointed to handle and control the case.

*Id.* at 523.

In sum, the prosecutor had been involved in the preparation of the case against his former client and was not screened. Under those circumstances, the entire office had to be recused. There would have been no need to talk about the ineffectual screening of the prosecutor if his conflict had required recusal of the entire office from the beginning.

2

Rather, the ineffectual screening simply demonstrated that recusal of the entire office was necessary since the screening remedy had failed.

This case is completely different. The charging decision had been made, the evidence developed, and the trial had been completed two years before Mr. Dano was elected prosecutor. Screening could be an effective remedy since there were no discretionary decisions to make about the case and none of the client's secrets could possibly be used against him in the future because the evidence and record already was settled. I do not believe that *Stenger* requires anything more in this case.

Nonetheless, I need to comment further because the majority's chosen test factors are ineffectual. First, the majority discounts the prosecutor's current activities as prosecutor, arguing they are irrelevant. They aren't. Prosecutor's offices run the gamut from two attorney offices to those numbering in the hundreds. Elected prosecutors vary in their practices—some are merely managers who set policy and have little or no responsibility for any particular case, while others maintain significant caseloads and have only minimal management functions. Some work solely on the civil or the criminal side of the office. Others leave civil and criminal department heads the job of managing their respective sides of the office. In many of these situations, it is easy to effectively screen the elected prosecutor from a particular case because it is a case that the prosecutor normally would not be involved with.

The majority ignores these differing office arrangements and turns, instead, to the nature of the prior representation of the defendant and the nature of the case charged. Without considering the possibility of effective screening in the particular circumstances of each office, the majority effectively writes that option out of existence. Instead, it relies on factors that are likely to always require recusal of the entire office.

The first of those factors is that nature of the prior representation. Although I agree that this factor could have some application to the remedy, the majority's limitation of the factor necessarily requires only one remedy—recusal. That arises from the fact that the majority is concerned with the prior representation only if the "prior work involved acquisition of privileged work product and/or confidential attorney-client communications." *All*[3] private communications between an attorney and client are privileged, whether or not the communications involve a client secret or not. In other words, as long as the client talked to the attorney, this factor will always suggest recusal is in order. As applied by the majority, this factor is largely meaningless except in those "extraordinary" cases where an attorney somehow represented a client without communicating with the client.

The second factor involves the seriousness of the case being prosecuted. This factor is problematic for two very different reasons. First, it draws the wrong lesson from

_____

[3] Subject to the exceptions of RPC 1.6(b).

4

*Stenger* and fails to focus on the problem of privileged information. Second, this factor is going to be very difficult to apply.

As to the first problem, the majority rightly notes that *Stenger* was concerned with the possible misuse of privileged information in making the decision to seek the death penalty.[4] From this, it discerns that the nature of the case is meaningful in deciding whether recusal is required. That is an overly ambitious leap of logic. Capital cases are sui generis, in part because the defendant's character and his prior convictions necessarily are at issue during sentencing. They are not necessarily at issue in any other criminal case. The leap from *Stenger* to a non-capital case is not justified.

More importantly, this factor is problematic because it only considers how the potential misuse of privileged information will affect the pending case, not how it will affect the client whose secrets are being misused. I think such a narrow focus is misplaced. It is the nature of the privileged information, not the nature of the current charge, that can make the privileged information particularly problematic. On occasion privileged information will be relevant to the case at hand, but likely the privileged information is potentially more damaging to the client's reputation than it is to the case in

---

[4] From a practical perspective, admission of the prior judgment and sentence during the sentencing phase of a capital case that shows the prosecuting attorney's name as the former attorney for the defendant is likely to be extremely damaging to the defendant. A juror might conclude that the prosecutor who represented the client has additional valid reasons for seeking the death penalty than those presented at trial.

question. The fact that damaging secrets are betrayed in a misdemeanor case rather than in a Class A felony is of no comfort to the damaged client. Thus, I see this focus, too, as too narrow.

The significance of the current case factor also is going to be very difficult to apply. What makes a case serious? Although our legislature has established seriousness levels for felony cases, it would be an arbitrary decision for judges to determine which ones are serious enough to matter for conflict of interest purposes. And, how would that work in the civil context? If the newly elected prosecutor was the county's preeminent private land use attorney and represented most of the county's big land developers, would that fact require that all cases involving those developers be farmed out to special prosecutors over the length of the entire term, or simply require that only pending projects the prosecutor had worked on before the election be sent out? Would, or should, the standard vary simply because the prosecutor had worked on only one small land use case involving a non-developer? These are very real problems in smaller counties where the smaller bars necessarily means that most attorneys will have worked on behalf of clients who were being opposed by the prosecutor's office, or by county agencies represented by that office.

Contrary to the majority opinion, I also see no reason why the seriousness level of the prior crimes matters. The fact that high-volume misdemeanor or juvenile court cases are "routine defense cases" should be meaningless except to suggest the possibility of

6

large numbers of future conflicts arising from having large numbers of former clients. One's privileged secrets, shared with defense counsel, simply do not become less important because the case in which they were divulged is less serious than a current case.

At issue in *Stenger* was the potential importance of privileged information to the charging decision in the pending case. The factors discerned by the majority from that decision are largely divorced from the privilege problem presented there. For that reason, I don't think those factors work.

Rather, I think a totality of the circumstances approach is necessary to determine if this, or any other, case is exempted from the "ordinary" or presumptive remedy of office-wide recusal. Rather than apply fixed factors that, to my mind, don't appear to determine which cases are "extraordinary," I think that factors to consider are those aspects of the particular case that suggest the "ordinary" remedy is unnecessary.

As to the totality of the circumstances applied to this case, I have already stated most of those considerations: (1) Mr. Dano had pretty minimal involvement in the defense of Mr. Nickels, serving primarily as a local contact attorney and taking the verdict, while not developing or implementing the defense; (2) the case was tried two years before Mr. Dano was elected prosecutor; (3) the case against Mr. Nickels was developed long before the election and without any possible disclosure of client secrets by Dano; (4) one of the deputy prosecutors on the original trial is still available to try the

7

case, and the other deputy assigned to the case was hired by the prior prosecutor; (5) this court ordered a new trial due to judicial error, not error contributed to by the attorneys on either side; (6) as prosecutor, Dano has had no involvement with this case, nor is there any evidence in the record that suggests the elected prosecutor normally would have had any involvement with the retrial—ergo, the screening has been effective. Two other factors, not previously mentioned, also suggest that this is the out-of-the-ordinary case where screening per RPC 1.11 would be effective and office-wide recusal is unnecessary.

One reason is that the county has tried to find a special prosecutor to handle the retrial. No other county was willing to take the case on, nor was the attorney general. The second reason is related to the first. This case took multiple weeks to try.[5] It will be extremely burdensome to some other office to take on this case, and it will be extremely expensive to Grant County to pay for a special prosecutor. Major murder cases are tried by experienced deputy prosecutors, and few counties are so well stocked with such veterans that they can afford to be without them for several weeks.[6] Even if such attorneys can be located and borrowed, it will cost the county money to feed and house them for several weeks, to say nothing of any salary costs. While these factors are

---

[5] My review of the previous file indicates that the Report of Proceedings totaled 29 volumes through final argument and verdict; sentencing and post-trial motions consumed additional hearings.

[6] As a result, I suspect that the attorney general is likely to be assigned these types of cases by trial judges needing to find a special prosecutor.

8

irrelevant to the determination that a conflict of interest exists, they should be factors taken into consideration in deciding whether there is any utility in imputing a conflict to an entire prosecutor's office in the absence of evidence that screening has failed to do the job.

The majority's resolution of this case will impose unnecessary office-wide recusals. While large offices can more easily address the comparatively small number of recusals generated by a single attorney in practice, even they will have problems dealing with the large number of cases handled by a public defender with significant supervisory authority. Small prosecutor offices will incur significant expenses in large cases, and probably have conflicts in a higher percentage of cases. Imputing an individual prosecutor's personal conflicts to the entire office is not necessary here.

In my opinion, the trial court did not err in deciding that screening Mr. Dano was adequate to protect Mr. Nickels' right to a fair retrial. Accordingly, I would affirm.

_____
Korsmo, J.

9