

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JAN 3 0 2020

CHIEF JUSTICE

This opinion was
filed for record
at 8a.m. on Jan 30 2020

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | No. 96943-4 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| DAVID EMERSON NICKELS, | ) | |
| | ) | Filed _____ JAN 3 0 2020 |
| Respondent. | ) | |

OWENS, J. — This case asks us to revisit the question of whether an elected

county prosecutor's prior involvement in a defendant's case should presumptively

disqualify the entire prosecutor's office from prosecuting the defendant in the same

case. When we first addressed this question in *State v. Stenger*, we held that an

elected prosecuting attorney's previous representation of a defendant in either the

same case or a closely interwoven matter "should ordinarily" disqualify the entire

prosecutor's office. 111 Wn.2d 516, 522, 760 P.2d 357 (1988). The State argues the

2006 amendments to Washington's Rules of Professional Conduct (RPCs)—

specifically, two amendments foreclosing office-wide imputations of conflicts for all

government attorneys generally—superseded *Stenger*. But *Stenger*'s narrowly crafted rule applies only to Washington's 39 elected county prosecutors who, despite adequate screening, retain broad discretionary and administrative powers over their offices and employees. Accordingly, we hold that *Stenger* remains good law, and we affirm the Court of Appeals' decision disqualifying the Grant County Prosecuting Attorney's Office.

## FACTS

The State charged David Nickels with first degree murder on June 16, 2010, in Grant County, Washington. Though represented by counsel, Nickels acquired additional legal assistance from a local criminal defense attorney, Garth Dano. The parties agree that Dano's involvement in Nickels' defense creates a conflict of interest requiring Dano's personal disqualification, but they dispute the scope of his involvement. The record establishes that Dano entered a notice of association of counsel and appeared on the record to receive a jury question and to receive the jury's verdict. The record further establishes that after Nickels' conviction in 2012, Dano conducted interviews with jurors and potential exonerating witnesses. Finally, via his counsel's uncontested affidavit, Nickels asserts Dano received privileged work product through his participation in crafting the defense's strategy and theory of the case, and his meeting personally with Nickels.

In 2014, while Nickels' appeal was pending, Dano was elected Grant County prosecutor. Subsequently, in 2017, the Court of Appeals reversed Nickels' conviction.

*State v. Nickels*, No. 31642-4-III (Wash. Ct. App. Feb. 28, 2017) (unpublished), http://www.courts.wa.gov/opinions/316424_unp.pdf. On remand, the Grant County Prosecuting Attorney's Office immediately sought to screen now-Prosecutor Dano.[1] Nickels moved to disqualify the entire office, arguing that under *Stenger,* Dano's prior involvement in his defense necessitated the blanket recusal.

The trial court denied Nickels' motion; but the Court of Appeals reversed and, applying *Stenger*, ordered the disqualification of the entire Grant County Prosecuting Attorney's Office. *State v. Nickels*, 7 Wn. App. 2d 491, 434 P.3d 535 (2019). Further, after determining that *Stenger* provided for an exception to the presumptive rule of disqualification in certain "extraordinary circumstances" and that we had not defined what is "extraordinary," the Court of Appeals applied its own two-factor "extraordinary circumstances" test. *Id.* at 497, 501. The State sought our review, which was granted. *State v. Nickels*, 193 Wn.2d 1012 (2019).

## ISSUE

Does *Stenger* remain good law, presumptively requiring the disqualification of an entire prosecutor's office when the elected prosecutor is personally disqualified due to their previous involvement in the defendant's current case or other closely interwoven matter?

---

[1] The adequacy of the State's current screening measures are not before us.

ANALYSIS

Whether attorney conduct violates the relevant RPCs is a question of law, which we review de novo. *Eriks v. Denver*, 118 Wn.2d 451, 457-58, 824 P.2d 1207 (1992).

1. *The 2006 Amendments to RPC 1.10(d) and Comment 2 to RPC 1.11 Do Not Supersede* Stenger*'s Narrow Rule*

In *Stenger*, the defendant moved to disqualify the entire prosecutor's office after the Clark County prosecutor—the defendant's former counsel—sought the death penalty. 111 Wn.2d at 518-19. During his service as defendant's counsel, the elected prosecutor was privy to the defendant's privileged information. *Id.* at 519. Subsequently, as elected prosecutor, he directly participated in and administered over multiple aspects of the defendant's prosecution before his eventual withdrawal and attempted screening. *Id.* at 519-520. In our analysis, we recognized that "privileged information obtained by the prosecuting attorney when he was the defendant's counsel in the previous case could well work to the accused's disadvantage in this case." *Id.* at 522. Accordingly, we held:

> Where the prosecuting attorney (as distinguished from a deputy prosecuting attorney) has previously personally represented the accused in the same case or in a matter so closely interwoven therewith as to be in effect a part thereof, the entire office of which the prosecuting attorney is administrative head should ordinarily also be disqualified from prosecuting the case.

*Id.* Notably, in announcing this rule, we clarified that office-wide disqualification was "neither necessary nor wise" when a *deputy* prosecuting attorney was personally

4

disqualified. *Id.* at 523. Thus, contrary to the characterizations of amici for the State, *Stenger*'s rule does not apply to all public law offices generally or the Washington Attorney General's Office specifically; it applies only to elected county prosecutors, and then only when their offices seek to prosecute a defendant they previously represented in either the same case or a closely interwoven matter.

Nearly two decades after our decision in *Stenger*, RPC 1.10 and 1.11 were substantively amended. Relevant here, these rules now provide that a government lawyer's personal conflict of interest is no longer imputed to their entire office. *See* RPC 1.10(d); RPC 1.11 cmt. 2.[2] The State asserts these amendments to the rules superseded *Stenger*. Accordingly, the State argues the Court of Appeals' reliance on *Stenger*'s rule of presumptive disqualification—not the general policy of screening advanced by the current RPCs—was error.

In support, the State relies on *Wallace v. Evans*, 131 Wn.2d 572, 934 P.2d 662 (1997), but neither *Wallace* nor its progeny is dispositive here. In *Wallace*, we held that a significant change in the rules may supersede our prior decisions interpreting a preamendment version of those rules. *Id.* at 576-77. However, *Stenger*'s rule of

---

[2] RPC 1.10(d) states in part that "[t]he disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11." RPC 1.11 comment 2 states in part that "[b]ecause of the special problems raised by imputation within a government agency, paragraph (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it will be prudent to screen such lawyers."

5

presumptive disqualification was not interpreting a prior version of RPC 1.10 or RPC 1.11, relying instead on two out-of-state decisions for its reasoning. *See Stenger*, 111 Wn.2d at 522 n.13 (citing *People v. Lepe*, 164 Cal. App. 3d 685, 688, 211 Cal. Rptr. 432 (1985); *State v. Tippecanoe County Court*, 432 N.E.2d 1377, 1379 (Ind. 1982)).

While the 2006 amendments discuss imputations of conflicts for all government attorneys generally, *Stenger* enumerated a narrow rule for an even narrower class of persons. To be clear, *Stenger*'s presumption of office-wide disqualification touches only Washington's 39 elected county prosecutors and it applies only when their offices are called to prosecute a defendant whom the elected prosecutor previously represented in either the same case or another closely interwoven matter. *Stenger*, 111 Wn.2d at 522. The amendments to RPC 1.10(d) and RPC 1.11 comment 2 enumerated a general rule for imputation of conflicts of interest between government attorneys and their offices that we read in harmony with *Stenger*'s narrow rule. Accordingly, we hold that office-wide disqualification is presumptively proper when an elected prosecutor has previously represented the defendant in the same case or closely interwoven matter.

2. *Public Policy and the Public's Absolute Right to the Appearance of a Just Proceeding Further Support Our Decision To Uphold* Stenger

In addition to our determination that the RPC amendments have not superseded *Stenger*'s narrow rule of presumptive disqualification, today's holding is compelled by our mandate to preserve the public's confidence in the impartial administration of

6

justice and the appearance of a just proceeding. *See State v. Tracer*, 173 Wn.2d 708, 720, 272 P.3d 199 (2012). The State argues that office-wide disqualification inflicts a distinct harm by depriving the citizenry of its chosen representative. The State contends this deprivation is significant given both the elected prosecutor's role in shaping office policy and their direct accountability to the electorate for their office's acts. In support, the State argues that "Prosecutor Dano confers appointments on attorneys whom he trusts to follow his policies," and the State candidly recognizes that any deputy prosecuting attorney who fails to comply with Dano's policies may be terminated at will.[3] State's Resp. to Br. of Amici Curiae Wash. Ass'n of Criminal Def. Lawyers & Wash. Def. Ass'n at 7. Furthermore, the State argues office-wide disqualification will require courts to appoint independent prosecutors who are "not required to have any familiarity with Prosecutor Dano's policies or office practices" and will not be "subject to termination by Prosecutor Dano for failing to comply with Prosecutor Dano's policies or office practices." *Id.* at 8-9.

Implicit in these arguments, however, is the State's recognition that an elected prosecutor retains considerable power over their office and employees in every case from which the elected prosecutor is merely screened. Like the Court of Appeals recognized below, no amount of screening can be sufficient to fully wall off Dano

---

[3] *See* RCW 36.16.070 (providing for an elected prosecutor's power of appointment of office deputies and employees); RCW 36.27.040 (providing for an elected prosecutor's power of appointment of special deputies).

7

from the case or prevent him from being cognizant of the resources being committed to Nickels' case and, thus, not devoted to other office priorities. *Nickels*, 7 Wn. App. 2d at 501. At bottom, the same arguments that the State advances in favor of screening and preserving the elected prosecutor's power over their office—administrative oversight of cases, control over office policy, and the power to terminate employees at will—highlight the many factors that weigh strongly in favor of a presumptive rule of office-wide disqualification.

We find further support in *Tracer*. There, we held that "'[t]he public has a right to absolute confidence in the integrity and impartiality of the administration of justice'" and that this right is impaired by the existence of conflicts that may "'give the proceeding an appearance of being unjust and prejudicial.'" 173 Wn.2d at 720 (alteration in original) (quoting *Howerton v. State*, 1982 OK CR 12, 640 P.2d 566, 568). We further held that this "absolute" public right to confidence in the integrity and impartiality of the justice system was not only based in the RPCs but also rooted in the importance of avoiding "the appearance of impropriety." *Id.* at 721. Thus, we affirmed that conflicts of interest implicate not only a defendant's right to a fair trial but also the State's and the public's interest in maintaining the appearance of a fair judicial process. *See id.*

To be clear, we have no reason to believe that either the Grant County prosecutor or his office behaved unethically in attempting to address the present conflict. However, the quality of their character is not determinative. What is

determinative is our evaluation of the effect of permitting the office of a conflicted elected prosecutor who retains significant administrative and discretionary powers, regardless of any screening—to prosecute the *same* defendant in the *same* case, which we must then measure against the public's right to *absolute* confidence in the integrity and impartiality of the administration of justice and the appearance of a just proceeding. *See Tracer*, 173 Wn.2d at 720-21. *Stenger* was right—except in extraordinary circumstances, office-wide disqualification and prosecution by an independent prosecutor is most faithful to the principles of integrity and impartiality required of our justice system.

Finally, while the State argues that our interpretation of *Stenger* should be cabined to its unique, underlying facts, we must observe that *Stenger*'s rule of presumptive disqualification is not couched in any limiting, fact-specific language. In effect, the State argues that our true holding in *Stenger* was our concluding observation that because the elected prosecutor failed to properly screen himself, "[w]e need go no further in this capital case in order to conclude that it is appropriate that a special prosecuting attorney be appointed." 111 Wn.2d at 523. But this narrow interpretation of our decision necessarily begs the question why did we announce a rule at all? *Stenger*'s rule of presumptive disqualification for elected prosecutors omits any reference to the underlying case's severity or the State's prior screening efforts. *Id.* at 522. Moreover, *Stenger*'s separate, concluding discussion of the facts on which the State relies actually highlights the ease with which we *could* have

resolved the question of disqualification *without* promulgating any rule. However, we chose a different path. The fact we announced a presumptive rule of disqualification that is unmoored from *Stenger*'s unique facts is significant and something the State's proposed reading of our decision is wrong to ignore.

3. *Because the Elected Prosecutor's Involvement Here Was Not Extraordinary, We Reject the Court of Appeals' Extraordinary Circumstances Test*

The Court of Appeals correctly concluded that *Stenger* did not announce a bright-line rule of disqualification but, instead, reserved an exception for "extraordinary circumstances." *Nickels*, 7 Wn. App. 2d at 498. However, the Court of Appeals further determined that *Stenger* did not define what "extraordinary" means, and so it crafted a two-factor test, including "(1) whether the prosecutor was privy to privileged information and (2) the nature of the case giving rise to the elected prosecutor's conflict of interest." *Id.* at 492-93. The State argues that the Court of Appeals' proposed test erroneously fails to consider current circumstances and that any test we adopt should consider "the complexity of the case, cost of [a] substitute lawyer, proximity to the trial date, availability of alternat[e] counsel, and adequacy of screening measures." Pet. for Review at 19. However, as explained below, because Dano's involvement in Nickels' defense was not extraordinary, we presently decline to endorse either test.

Regardless of the parties' sparring characterizations, the record is clear that Dano was sufficiently involved in Nickels' defense such that his participation was not

extraordinary and no further analysis is required for us to conclude that office-wide disqualification is appropriate. Dano made multiple appearances on the record at trial on Nickels' behalf. Additionally, after the first trial, Dano spoke with jurors and interviewed potential exonerating witnesses. Actual, direct involvement of the character shown here is not extraordinary representation—it is the norm, even if it is limited. We cannot envision every unusual case. Rather than devise a test to capture what may theoretically be considered extraordinary in some future case, we believe that project is better left for a case that actually raises the question.

CONCLUSION

Washington's 39 elected county prosecutors possess considerable administrative and discretionary powers over their offices and employees. Though Washington's RPCs have eliminated imputations of conflicts among government attorneys generally and permit screening in most circumstances, *Stenger* created a narrow exception in those few cases where the elected county prosecutor has previously represented the defendant in the same case or a closely interwoven matter. In those cases, office-wide disqualification—not screening—is required to preserve the appearance of a just proceeding and the public's confidence in the impartial administration of justice. For these reasons, we hold that *Stenger* remains good law and affirm the Court of Appeals' decision to disqualify the entire Grant County Prosecutor's Office. However, because Dano's involvement in Nickels' defense was not extraordinary, and no further analysis is required for us to conclude that office-

11

wide disqualification is appropriate in the instant case, we reject the Court of Appeals'

extraordinary circumstances test.

WE CONCUR:

_____

Owens, J.

_____

Johnson, J.

_____

Wiggins, J.

_____

Madsen, J.

_____

No. 96943-4

GORDON McCLOUD, J. (concurring)—As the lead opinion states, the

people of this state have an "absolute right to the appearance of a just

proceeding." Lead opinion at 6 (italics and capitalization omitted). This is

especially true where, as here, the State charges an individual with a serious crime

that carries a lengthy term of imprisonment. I further agree that this court's 30-

year-old decision in *State v. Stenger*, 111 Wn.2d 516, 760 P.2d 357 (1988), is

necessary to preserve that right. For that reason, I join Parts 2 and 3 of the lead

opinion and its conclusion that the *Stenger* rule of office-wide disqualification

"remains good law." Lead opinion at 11.

1

No. 96943-4

YU, J. (concurring in part and dissenting in part) — The lead opinion's

presumptive rule of office-wide disqualification is not supported by *State v.*

*Stenger*, 111 Wn.2d 516, 760 P.2d 357 (1988), and directly conflicts with the

current Rules of Professional Conduct (RPCs). Indeed, our 2006 amendments to

the RPCs marked a profound reformulation of our rules concerning government

lawyers' conflicts of interest and significantly altered how we address conflicts in

public offices. Furthermore, contrary to the lead opinion's assertions, public

policy does not support presumptive disqualification, as timely ethical screening

generally preserves the appearance of a just proceeding. Therefore, I would hold

that RPC 1.11 governs conflicts of interest for government attorneys, including

elected prosecutors, and strongly disfavors imputing a government lawyer's

personal conflicts to their entire office. Accordingly, I would reverse the Court of

Appeals and hold that the Grant County Prosecuting Attorney's Office is not

presumptively disqualified from representing the State in this case. However, I

agree with the lead opinion that we should decline to adopt the Court of Appeals'

extraordinary circumstances test. I therefore respectfully dissent in part and concur

in part.

## ANALYSIS

A. The language in *Stenger* that the lead opinion relies on is dicta, and the facts
   are distinguishable from the facts presented in this case

The crux of the lead opinion's argument favoring presumptive

disqualification is based on the following dicta from *Stenger*:

> "Where the prosecuting attorney (as distinguished from a deputy
> prosecuting attorney) has previously personally represented the
> accused in the same case or in a matter so closely interwoven therewith
> as to be in effect a part thereof, the entire office of which the
> prosecuting attorney is administrative head *should ordinarily also be
> disqualified from prosecuting the case*."

Lead opinion at 4 (emphasis added) (quoting *Stenger*, 111 Wn.2d at 522).

However, the lead opinion misidentifies this dicta as *Stenger*'s holding. To the

contrary, *Stenger*'s actual holding is limited to the facts of the case:

> Under the facts of the case before us, although the prosecuting attorney
> did eventually delegate handling of the case to a deputy prosecuting
> attorney in his office, *he did not effectively screen and separate himself
> from the case* but instead maintained quite close contact with it. *We
> need go no further* in this capital case in order to conclude that it is
> appropriate that a special prosecuting attorney be appointed to handle
> and control the case.

*Stenger*, 111 Wn.2d at 523 (emphasis added). Accordingly, our holding in *Stenger* is actually very narrow and fact specific, and is based on ineffective screening, rather than presumptive office-wide disqualification. Further evidence of this limited holding can be found in our narrow framing of the issue: "*Under the facts of this case*, should the prosecuting attorney's representation of the defendant in a prior criminal case disqualify the prosecuting attorney as well as his staff from handling the prosecution of the defendant . . . *where the death penalty is sought?*" *Id.* at 520 (emphasis added).

Moreover, on review to this court, the parties in this case do not dispute the adequacy of the screening mechanism, only whether the entire office should be presumptively disqualified. This is in stark contrast to *Stenger*, where the prosecutor's ineffective screening served as the basis for disqualifying his entire office. *Id.* at 523. In short, *Stenger* did not hold that presumptive disqualification is proper. Rather, ineffective screening and the unique circumstances surrounding Stenger's capital case led to this court's narrow holding. Accordingly, the lead opinion misidentifies *Stenger*'s actual holding and errantly relies on dicta to support presumptive disqualification.

B.     The 2006 amendments to the RPCs supersede *Stenger* and do not support presumptive, office-wide disqualification of an entire county prosecutor's office

Even if the lead opinion did accurately identify a controlling holding in *Stenger*, it is well settled that a material change to a court rule may supersede prior case law interpreting that rule. *See State v. Greenwood*, 120 Wn.2d 585, 845 P.2d 971 (1993); *see also Wallace v. Evans*, 131 Wn.2d 572, 934 P.2d 662 (1997). Moreover, this court has further clarified that we need not "overrule old cases that have been superseded by a significant change in the [court] rule they interpret." *Wallace*, 131 Wn.2d at 577. RPC 1.10 and 1.11 were substantively amended in 2006. These amendments supersede *Stenger*'s suggestion that office-wide disqualification is presumptively required, and the lead opinion's efforts to harmonize *Stenger* with the current RPCs effectively reads elected prosecutors out of rules 1.10 and 1.11 without any textual support.

1.    The 2006 amendments to the RPCs supersede *Stenger*

When analyzing whether a court rule supersedes a prior decision, we inquire whether its amendment "materially change[s]" the rule. *Greenwood*, 120 Wn.2d at 592-93. We do not presume that amendments overturn settled legal principles unless "'an intention to do so plainly appears by *express declaration* or *necessary or unmistakable implication*, and the language employed [in the amendment] admits of no other reasonable construction.'" *Id.* at 593 (alteration in original) (quoting *Ashenbrenner v. Dep't of Labor & Indus.*, 62 Wn.2d. 22, 26, 380 P.2d 730 (1963)). Our 2006 amendments to RPC 1.10 and 1.11 did not expressly

declare our intention to supersede *Stenger*, but they necessarily imply this intention.

We construe the RPCs "to foster the purposes for which they were enacted." *Id.* In 2006, this court made several material changes to the RPCs that alter the way conflicts of interest among government lawyers are handled, and we expressly stated that the purpose behind the amendments was to avoid imputing conflicts to entire public offices.

First, we added RPC 1.10(d) to indicate that "[t]he disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11." Adoption of RPC 1.10(d), 157 Wn.2d 1208 (2006). This indicates that we intended to treat government lawyers' conflicts differently than those of lawyers who work in private firms. Notably, RPC 1.10 expressly provides for imputed disqualification in private firms, in contrast to RPC 1.11, which does not.

Next, we added RPC 1.10 cmt. 2 to explain that the rule of imputed disqualification "gives effect to the principle of loyalty to the client . . . . Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client." Adoption of RPC 1.10 cmt. 2, 157 Wn.2d 1209 (2006). We therefore amended RPC 1.10 to

ensure that government lawyers, with the exception of public defenders, are not subject to a rule that allows for imputed disqualification.

Third, we changed the title of RPC 1.11 to clarify that the amended rule applies to "Special Conflicts of Interest for Former and Current Government Officers and Employees." Adoption of RPC 1.11, 157 Wn.2d 1213 (2006). Prior to our 2006 amendments, Rule 1.11 was entitled "Successive Government and Private Employment." *Id.* This shows a further intent to treat conflicts among government lawyers and private firm lawyers differently.

Finally, to clear any remaining doubt about office-wide conflict imputation, we added RPC 1.11 cmt. 2, which provides:

> Paragraphs (a)(1), (a)(2) and (d)(1) restate the obligations of an individual lawyer who has served or is currently serving as an officer or employee of the government toward a former government or private client. Rule 1.10 is not applicable to the conflicts of interest addressed by this Rule. Rather, paragraph (b) sets forth a special imputation rule for former government lawyers that provides for screening and notice. *Because of the special problems raised by imputation within a government agency, paragraph (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees*, although ordinarily it will be prudent to screen such lawyers.

Adoption of RPC 1.11 cmt. 2, 157 Wn.2d 1215 (2006) (emphasis added). Our intention behind this comment is unmistakable; we sought to ensure that government lawyers' conflicts of interest would not be imputed to other associated government lawyers. While I disagree with the lead opinion that *Stenger* created a

6

rule of presumptive disqualification, as discussed above, *any* rule that presumptively disqualifies an entire county prosecutor's office directly conflicts with our material changes to RPC 1.10 and 1.11. Therefore, our 2006 amendments to the RPCs supersede *Stenger*.

Significantly, the lead opinion does not dispute that the 2006 amendments materially changed our rules concerning the imputation of conflicts of interest. Indeed, the lead opinion acknowledges that "[n]early two decades after our decision in *Stenger*, RPC 1.10 and 1.11 were substantively amended." Lead opinion at 5. As the lead opinion recognizes, "these rules *now provide* that a government lawyer's personal conflict of interest is *no longer imputed to their entire office.*" *Id.* (emphasis added). Because presumptive disqualification is "in *irreconcilable conflict* with the amendment[s]," *Stenger* is impliedly repealed. *Greenwood*, 120 Wn.2d at 593. The lead opinion therefore errs by reading RPC 1.10 and 1.11 "in harmony with *Stenger*'s narrow rule." Lead opinion at 6.

Notably, the lead opinion does not offer any legal authority to support its contention that the RPCs do not supersede *Stenger*. Instead, the lead opinion unpersuasively argues that "*Stenger*'s rule of presumptive disqualification was not interpreting a prior version of RPC 1.10 or RPC 1.11, relying instead on two out-of-state decisions for its reasoning." *Id.* at 5-6. This is simply incorrect. In fact, *Stenger*'s analysis begins with an overview of what "[t]he Rules of Professional

7

Conduct require," then cites to the RPCs a total of three times. *Stenger*, 111

Wn.2d at 520 & n.5 (citing RPC 1.9(a), 1.11(c)(1)), 523 n.15 (citing RPC 1.11).

*Stenger* first cites to RPC 1.9, which was then titled "Conflict of Interest;

Former Client." Our 2006 amendments changed the title to "Duties to Former

Clients" on the basis that "conflicts that arise based on a lawyer's former

association with a firm are now addressed in [RPC 1.9], while Rule 1.10 addresses

solely imputation of that conflict." Adoption of RPC 1.9, 157 Wn.2d 1202 (2006);

Adoption of RPC 1.10 cmt. 9, 157 Wn.2d 1211 (2006). The lead opinion thus

overlooks *Stenger*'s reference to RPC 1.9 and therefore fails to recognize the role

that the outdated rule played in shaping *Stenger*'s outcome.

*Stenger* further cites RPC 1.11 twice, including as authority for the

proposition that "disqualification of the entire prosecuting attorney's office is

neither necessary nor wise." 111 Wn.2d at 523. And while I disagree with the

Court of Appeals' holding, that court also recognized that *Stenger* relied on the

RPCs for its analysis: "*Stenger* addressed the issue of when, under the Rules of

Professional Conduct (RPC), an elected prosecutor's conflict of interest must be

imputed to the balance of the prosecutor's office." *State v. Nickels*, 7 Wn. App. 2d

491, 495, 434 P.3d 535 (2019). Contrary to the lead opinion's reasoning, the

*Stenger* court thus consulted the RPCs governing conflicts and relied on the rules

for its reasoning. Consequently, the lead opinion's primary argument against

8

finding that the amended RPCs supersede *Stenger* does not find support in *Stenger*

itself.

2.     RPC 1.11 governs elected prosecutors' conflicts of interest

We interpret court rules in accordance with the rules of statutory

construction. *City of Seattle v. Guay*, 150 Wn.2d 288, 300, 76 P.3d 231 (2003).

Our interpretation of the RPCs begins with the plain meaning of the rules. *Lake v.*

*Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

> Plain meaning "is to be discerned from the ordinary meaning of the
> language at issue, the context of the [rule] in which that provision is
> found, related provisions, and the [RPC] scheme as a whole." . . . [W]e
> "must not add words where the [court] has chosen not to include them,"
> and we must "construe [court rules] such that all of the language is
> given effect." If the [rule] is unambiguous after a review of the plain
> meaning, the court's inquiry is at an end.

*Id.* (citation omitted) (quoting *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007
(2009); *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598
(2003)).

Here, a plain reading of RPC 1.10 and 1.11 makes clear that a government

lawyer's conflicts of interest should not disqualify their entire public office. This

is gleaned from both the structure and language of the RPCs. There is no

exemption for elected prosecutors, who are certainly government lawyers, subject

to RPC 1.11's conflicts rules.

With respect to the structure of the RPCs, our 2006 amendments bifurcated

our treatment of conflicts of interest, which turn on whether a lawyer works in a

public or private office: RPC 1.10 governs the "Imputation of Conflicts of Interest: General Rule," which permits the imputation of conflicts to associated lawyers in private and public defense firms, while RPC 1.11 governs "Special Conflicts of Interest for Former and Current Government Officers and Employees." The amendments added what is now RPC 1.10(d), which states that "[t]he disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11." Adoption of RPC 1.10(d), 157 Wn.2d at 1208. Our deliberate restructuring of RPC 1.10 and 1.11 during the 2006 amendment process therefore demonstrates our intention to have different conflict of interest rules for government lawyers and those in private firms.

Moreover, we amended RPC 1.10 and 1.11 again in 2018 to clarify that RPC 1.10 applies to public defenders, as well as lawyers in private firms. Adoption of RPC 1.10(d), 189 Wn.2d 1134 (2018); Adoption of RPC 1.11 cmt. 11, 189 Wn.2d 1134-35 (2018). Our stated purpose for amending RPC 1.10(d) was "to make RPC 1.10 applicable to all public defenders *regardless of whether they are government employees*." Proposed amendment to RPC 1.10(d), 187 Wn.2d Proposed-11 (Official Advance Sheet No. 8, Apr. 25, 2017) (emphasis added). We also adopted a comment to RPC 1.11 explaining that "[p]ublic defenders represent individuals, not the government. For this reason, imputed conflicts in public defender firms are determined under RPC 1.10 rather than this rule regardless of whether the lawyers

10

are public officers or employees." Adoption of RPC 1.11 cmt. 11, 189 Wn.2d at 1135. Notably, we did not include elected prosecutors in RPC 1.10, along with public defenders. Rather, *all* other government officers or employees, including elected prosecutors, are subject to RPC 1.11.

As previously discussed, the unambiguous language of RPC 1.11 could not be clearer: "Because of the special problems raised by imputation within a government agency, paragraph (d) *does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees.*" RPC 1.11 cmt. 2 (emphasis added).

Despite the plain meaning of RPC 1.10 and 1.11, the lead opinion seeks to carve out an exception for elected prosecutors in RPC 1.11 with no textual support. Instead, the lead opinion reasons that *Stenger* "touches only Washington's 39 elected county prosecutors," therefore presumptive disqualification can be harmonized with RPC 1.11. Lead opinion at 6. In short, the lead opinion justifies the drastic measure of disqualifying an entire county prosecutor's office, even when timely and effective screening measures are put in place, because only 39 individuals can trigger this process. Accepting this reasoning runs afoul of our rules of statutory construction by altogether reading a group of government lawyers out of a rule that expressly regulates government lawyers' conflicts of interest. There is no justification for such a reading.

11

I would therefore hold that our 2006 amendments to RPC 1.10 and 1.11 superseded *Stenger* and do not support presumptive, office-wide disqualification of an entire county prosecutor's office.

C.      Public policy does not support disqualifying an entire prosecutor's office

Turning now to public policy concerns, I agree with the lead opinion that the appearance of a just proceeding is of paramount importance. However, I disagree that allowing the Grant County Prosecutor's Office to proceed with prosecuting Nickels creates the appearance of unfairness. Not only is ethical screening a preferable and practical alternative to office-wide disqualification, erecting a timely screen preserves the appearance of a just proceeding. Moreover, the use of screens complements our long-standing principle that we presume our public officers act in good faith. Accordingly, public policy supports the use of timely ethical screens in lieu of disqualifying the entire prosecutor's office when the elected prosecutor has a personal conflict of interest.

1. Timely ethical screening preserves the appearance of a just proceeding

The lead opinion contends that "no amount of screening can be sufficient to fully wall off [elected prosecutor] Dano from the case," which undermines "the public's confidence in the impartial administration of justice." Lead opinion at 7-8, 6-7. As support for this proposition, the lead opinion points to *State v. Tracer*, which held that a defense attorney was not qualified to serve as a special deputy

prosecutor because the attorney regularly represented criminal defendants in the same court. 173 Wn.2d 708, 720, 272 P.3d 199 (2012). But *Tracer* is readily distinguishable.

*Tracer*'s concerns about the appearance of impropriety were supported by the RPC's rules surrounding concurrent conflicts of interest, which pointedly prohibited the defense attorney from representing the State. *Id.* at 720-21. The lead opinion's reliance on *Tracer* is therefore unavailing, as the facts concerned a direct violation of the RPCs based on a concurrent conflict of interest, which implicated the appearance of a fair proceeding. That is not the case here. No party alleges that any RPCs were violated, and the RPCs plainly disfavor imputing conflicts in public offices.

Furthermore, the lead opinion's position is inconsistent with this court's endorsement of ethical screens as mechanisms to effectively ward off and contain conflicts of interest. Recognizing the disruption and hardship that blanket disqualification can cause, we amended the RPCs to avoid sweeping imputation of conflicts in public offices. RPC 1.11 cmt. 2. Moreover, on review before this court, there is no dispute that Prosecutor Dano was timely screened from this case or that "[t]he screen was erected before Prosecutor Dano discussed the case with any members of the Grant County Prosecuting Attorney's Office." Pet. for Review

at 4. Consequently, the lead opinion's policy argument is not supported by the facts of this case or by our own rules that favor the use of ethical screens.

> 2.     We presume elected prosecutors carry out their duties in good faith

The lead opinion further asserts that "we have no reason to believe that either the Grant County prosecutor or his office behaved unethically in attempting to address the present conflict. However, the quality of their character is not determinative." Lead opinion at 8. This statement is problematic, as it overlooks the well-established principle that public officers are presumed to act properly. *Bracy v. Gramley*, 520 U.S. 899, 909, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997) ("Ordinarily, we presume that public officials have 'properly discharged their official duties.'" (internal quotation marks omitted) (quoting *United States v. Armstrong*, 517 U.S. 456, 464, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996))); *State v. Terrovonia*, 64 Wn. App. 417, 422, 824 P.2d 537 (1992) (presuming that prosecutors act in good faith); *Jones v. Halvorson-Berg*, 69 Wn. App. 117, 127, 847 P.2d 945 (1993) ("A judge is presumed to perform [their] functions 'regularly and properly and without bias or prejudice.'" (quoting *Kay Corp. v. Anderson*, 72 Wn.2d 879, 885, 436 P.2d 459 (1967)))). Because we presume that elected prosecutors act in good faith, I disagree with the lead opinion's concern that the appearance of fairness is compromised if the elected prosecutor is properly screened and a deputy prosecuting attorney represents the State.

D.     We need not reach the Court of Appeals' extraordinary circumstances test

Because I would hold that the RPCs supersede *Stenger* and that presumptive

disqualification is improper, I would not reach the question of whether we should

adopt the Court of Appeals' extraordinary circumstances test. However, even if

*Stenger* remains good law, I agree with the lead opinion that Prosecutor Dano's

involvement in Nickels' defense was not extraordinary. I therefore concur with the

lead opinion's holding that we should reject the extraordinary circumstances test.

## CONCLUSION

The lead opinion relies on distinguishable dicta from *Stenger* that has been

superseded by the 2006 amendments to the RPCs. Further, elected prosecutors'

conflicts of interest are subject to RPC 1.11 because they are government lawyers.

Accordingly, Prosecutor Dano's conflict of interest should not be presumptively

imputed to the entire Grant County Prosecuting Attorney's Office. However, I

agree with the lead opinion that we should reject the Court of Appeals'

extraordinary circumstances test. I therefore respectfully dissent in part and concur

in part.

_____
Yu, J

González, J.

Maya, J.P.T.

Stephens, J.

16